**In re John B. KENNEDY, a member of the Bar of the Supreme Court of the State of Delaware.**

Supreme Court of Delaware.
Submitted: June 27, 1985.
Decided: Aug. 30, 1985.
Reargument Denied Nov. 25, 1985.

Samuel C. Stretton, West Chester, Pa., for respondent.

L. Susan Faw, Disciplinary Counsel, Wilmington, for the Bd. on Professional Responsibility.

Before McNEILLY, HORSEY and MOORE, JJ.

PER CURIAM;

Nos. 9, 56, 264 and 314, 1984 and Nos. 38, 144 and 145, 1985 are before the Court pursuant to Rule 9(e) of the Rules of the Board on Professional Responsibility for review of the Board's recommendation to the Court that disciplinary action is warranted in subject matters. Nos. 204 and 205, 1982 and Nos. 60 and 75, 1983 are before the Court for review of this Court's Order dated March 21, 1985 directing Respondent to show cause why he should not be held in contempt of court for violating this Court's Order of Suspension dated January 24, 1984, and for filing a false affidavit of compliance dated February 17, 1984.

## NO. 9, 1984

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Board of Professional Responsibility finds disciplinary action to be warranted upon charges advanced and heard by the Committee, composed of A. Dean Betts, acting as Chairman, Myron T. Steele, Joseph W. Maybee, Richard Stokes and Charles F. Richards, Jr., at a hearing held May 23, 1983. The Findings of Fact and Conclusion of Law with respect thereto are set forth in this report following:

### FINDINGS OF FACT

1. The Board of Professional Responsibility determined that there was reasonable cause to inquire into the matter of whether, from January 1, 1978, to December 31, 1981, the Respondent maintained the books and records required by the Code of Professional Responsibility, DR9–102, Interpretive Guideline No. 2.

2. Respondent, by letter dated August 27, 1982, from F. Alton Tybout, a Board member designated to inquire into the matter, was advised that Mr. Tybout was undertaking a preliminary investigation as requested by the Board.

3. On the same date, i.e., August 27, 1982, certain interrogatories, together with a subpoena, were directed to Respondent seeking information and records to determine whether or not the books and records were being kept by

Respondent as required by Interpretive Guideline No. 2 of DR9–102.

4. Respondent, through his attorney, Samuel C. Stretton, engaged in correspondence with Board member F. Alton Tybout concerning the interrogatories and the subpoena and ultimately advised Mr. Tybout that his client would not produce any records or answer the interrogatories as propounded by letter dated October 26, 1982.

5. Respondent continues to decline to produce the information requested, which resulted in the issuance of an Order to Show Cause, dated December 28, 1982.

6. Respondent has refused to answer the interrogatories and honor the subpoena. The interrogatories propounded and the subpoena issued have been determined by the Board to request relevant information to matters under investigation by the Board, pursuant to Board Rules 8 and 13, respectively.

## CONCLUSION OF LAW

Respondent, in his refusal to answer the interrogatories and submit the information requested in the subpoena, has violated DR1–103(c) and for such misconduct the Board recommends the Respondent be disciplined.

Dated the *30th* day of *December*, A.D., 1983.

On January 17, 1984 the Respondent, through his then counsel Samuel C. Stretton, Esq., filed in this Court Respondent's Exceptions to the Board's Final Report, however, by Stipulation between Respondent and former Disciplinary Counsel, filed in this Court on September 21, 1984, the Respondent withdrew his exceptions and agreed to waive briefing and oral argument in this matter and agreed to submit the matter to this Court upon the record.

### NO. 56, 1984

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Board of Professional Responsibility finds disciplinary action to be warranted upon charges advanced and heard by the Committee, composed of A. Dean Betts, acting as Chairman, Myron T. Steele, Joseph W. Maybee, Richard Stokes and Charles F. Richards, Jr., at a hearing held May 23, 1983. The Findings of Fact and Conclusion of Law are as follows:

## FINDINGS OF FACT

1. On April 25, 1983, the Board of Professional Responsibility received a written complaint from Martha A. McGinn against John B. Kennedy, Esquire, which alleged, among other things, an excessive fee of 40% for an uncontested Workman's Compensation case, the possible conversion of $3,441.41 in March or April of 1983 and intimidation directed against her by Mr. Kennedy in response to her demand for the return of this money.

2. Following receipt of this complaint, Richard E. Poole, Esquire, an associate member of the Board of Responsibility, was appointed to investigate this case.

3. Mr. Poole provided Mr. Kennedy with a copy of the McGinn complaint and asked him to submit a written response by May 12, 1983.

4. Following a written demand by Mr. Poole, Mr. Kennedy provided some but not all information on May 20, 1983.

5. Thereafter, pursuant to the provisions of Board Rules 8 and 13, on June 1, 1983, Mr. Poole directed ten interrogatories to Mr. Kennedy for his answering under oath together with a subpoena. These interrogatories seek relevant information about Martha A. McGinn's allegations of an excessive fee, conversions of money, and intimidation and also request the production of attorney work product, fee and billing records and Martha A. McGinn's retainer agreement.

6. Mr. Kennedy has provided some but not all the records requested and has not answered the questions under oath

despite prior oral and written demands from Mr. Poole in June and July of 1983.

7. On October 10, 1983, the Board issued a Rule to Show Cause about Mr. Kennedy's apparent failure to cooperate with the investigation in violation of DR 1–103.

8. On October 19, 1983, Mr. Kennedy filed with the Supreme Court three separate Motions to quash subpoenas and for protective orders, one of which included the matters in controversy in this case. These applications were denied on October 24, 1983.

9. At the hearing on November 30, 1983, Mr. Kennedy stated that the interrogatories would not be answered. To-date of filing of this Report, no answers have been filed, and the subpoena is ignored.

10. At the hearing on November 30, 1983, Mr. Kennedy stated, among other things, that the interrogatories were not answered because of his purported good faith reliance upon advice of counsel, Samuel C. Stretton, a member of the Pennsylvania Bar. However, Mr. Kennedy claimed that the information would be supplied if the Supreme Court ultimately rejected his challenges to Board Rules on the subject.

11. A letter introduced into evidence as Exhibit 11 from Mr. Kennedy to the Chairman of the Board, O. Francis Biondi, Esquire, shows that he retained Mr. Stretton in this case on October 26, 1983, a date after answers to the interrogatories were due, after the issuance of the Rule to Show Cause and after denial of his Motion to quash and for a protective order. Mr. Kennedy also requested and was granted a continuance so that Mr. Stretton could be present for the hearing on this Rule to Show Cause.

12. Mr. Kennedy was not represented at the November 30, 1983 hearing by Mr. Stretton. Mr. Stretton advised the Chairman of the Special Panel that he would not appear because of Mr. Kennedy's failure to pay his fee. At one point,

Mr. Kennedy advised the Panel that Mr. Stretton was instructed by him not to appear. Nevertheles, Mr. Kennedy claimed that Mr. Stretton was his counsel and refused to answer questions addressed to him by the Panel concerning his objections and legal position.

13. Mr. Kennedy's demeanor and conduct show that his refusal to supply the information is calculated to obstruct the Board's investigation into serious allegations about his professional conduct and fitness to represent clients. His failure to cooperate is not motivated by good faith but rather reflects a desire to avoid an inquiry into the underlying charges of a possibly excessive fee, conversions and intimidation.

## CONCLUSIONS OF LAW

Respondent, John B. Kennedy, Esquire, in his refusal to answer the interrogatories and submit the information requested in the subpoena has violated DR1–103(A) and (c), and for such misconduct, the Special Panel unanimously recommends that he be disciplined.

Dated the *30th* day of *January*, A.D. 1984.

Thereafter, on March 7, 1984 the Respondent filed Exceptions to the Board's findings but thereafter failed to comply with this Courts briefing schedule issued on June 4, 1984. Consequently, by Order dated October 23, 1984, Horsey, J., Respondent was Ordered to Show Cause why his Exceptions should not be stricken due to Respondent's failure to comply with this Court's brief schedule, (the file contains no response by Respondent to said Order). Thereafter, on November 5, 1984 Respondent and Disciplinary Counsel entered into a Stipulation wherein Respondent admitted that he had violated DR1–103(A) and (C) as set forth in the Findings of Fact and Conclusions of Law in the Board's Final Report. Said Stipulation contains Respondent's request that the above referenced matter be dismissed.

## NO. 264, 1984

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

On March 16, 1984, the above captioned matter was heard before a Panel of the Board on Professional Responsibility consisting of A. Dean Betts, Chairman, Joseph Whitmore Maybee, Richard Stokes, and Myron T. Steele.

RULE TO SHOW CAUSE:

A Rule to Show Cause dated January 6, 1984 charged the Complainant with two separate charges. At the beginning of the hearing, counsel presenting the evidence on the Complaint informed the Panel that I of the Rule to Show Cause was dropped. The hearing then went forward taking evidence on II which alleged as follows:

II. An additional charge against you is that in representing yourself with respect to a complaint to the Board on Professional Responsibility made by Charles Kennedy, Esq., you engaged in harassment against him on the telephone in violation of DR7–102.

DR7–102 provides in relevant part as follows:

DR7–102(a) In his representation of a client, a lawyer shall not:

(1) . . . take other action on behalf of his client when he knows or when it is obvious such action would serve merely to harass . . . another.

FINDINGS OF FACT:

The original complaint from Charles J. Kennedy, Esq. by letter of May 2, 1983 objected to advertisements published by John B. Kennedy referring to his firm as "Kennedy Attys.". The complaint was based upon an allegation that the advertisements were confusing and misleading in that they may have indicated that Charles J. Kennedy and John B. Kennedy, brothers, were members of the same firm.

Charles Kennedy appeared before the Board and testified that his complaint was made to the Board because no first name was used with the name Kennedy and that the plural was used for "attorneys" rather than simply "attorney" when there was only one attorney in John B. Kennedy's firm. He expressed a concern in making the complaint that people would think that "Kennedy Attys." included him. In May of 1983, Charles Kennedy received a telephone call from John Kennedy asking if Charles had sent a letter to the Censor Committee in regard to him. During the telephone conversation, John Kennedy threatened to sue Charles Kennedy for making the complaint. John Kennedy shouted over the telephone, threatened suit, and used profanity. The entire conversation was "very loud, very profane" and "threatening."

On Monday, March 12, 1984 (three days before this hearing) John Kennedy called Charles Kennedy again and threatened Charles Kennedy with suit concerning the complaint and over an apparent dispute about horses owned by the complainant and respondent if Charles "appeared here at the hearing."

Charles Kennedy was not threatened by John Kennedy with any physical harm to himself or to his property.

At the time of the original telephone call from John Kennedy to Charles Kennedy, the complaint before the Board on Professional Responsibility had been referred to the Chairman of the Board for investigation. After receiving the two telephone conversations, Charles Kennedy was concerned that following through on his complaint to the Board on Professional Responsibility might result in a suit brought against him. No matter how frivolous that suit might be, it could interfere with his practice and possibly affect his professional liability insurance. The phone call made the Monday before the Thursday, March 15, 1984 hearing before the Board included a demand by John Kennedy that Charles Kennedy not appear for the hearing or he would be sued, be required to return John Kennedy's saddles and be refused permission to

ride John Kennedy's horse. Threats of suit included a threat of misappropriation of John Kennedy's ads by Charles Kennedy in the newspapers.

John Kennedy admitted that he made the telephone calls to Charles Kennedy, that the two got into a shouting match and that he "may have said something in regard to a threat to sue but could not recall." Again, the Monday immediately before the hearing, John Kennedy admitted he mentioned the lawsuit to his brother on the telephone.

## CONCLUSIONS OF LAW

The Panel reaches the following conclusions of law:

1. At the time of the conduct complained of, John B. Kennedy was representing himself.

2. In May of 1983 and again on March 12, 1984, John B. Kennedy called the person known to him to be the primary complaining witness against him in a matter concerning advertising that was pending investigation before the Board on Professional Responsibility. John B. Kennedy called that witness, shouted to him over the telephone, used profanity, threatened litigation against him on two distinct occasions knowing and when it would be obvious to anyone that these actions would serve merely to harass a witness and to intimidate him from testifying before the Board.

3. Considering the unfortunate circumstance that the complaining witness and the respondent are brothers, even if a broad inference could be drawn that John Kennedy would not follow through with the threatened actions, the instigation of the phone calls, the manner in which the calls were conducted, and the manner in which John Kennedy conducted himself leads the Board to the inescapable conclusion that the purpose of the calls were to embarrass, harass, and annoy the complaining witness, contrary to DR7-102(A)(1).

WHEREFORE, the Panel recommends that the respondent be disciplined by the Supreme Court for the violation of DR7-102(A)(1).

On October 12, 1984 the Respondent filed with this Court Respondent's Exceptions to the Boards Findings of Fact and Conclusions of Law wherein Respondent asserts that the Respondent "... merely had a personal discussion with his brother and at that time was not representing anyone whatsoever." The Respondent requests this Court to dismiss the recommendations of the Board.

## NO. 314, 1984
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On June 22, 1984, the above-captioned matter came on for a hearing before a Panel of the Board on Professional Responsibility consisting of A. Dean Betts, Chairman, Myron T. Steele, Joseph Whitmore Maybee, Richard F. Stokes and Charles F. Richards, Jr. The respondent was charged with violating the Code of Professional Responsibility in the following respects:

1. Aiding a non-lawyer in the unauthorized practice of law by permitting and causing an employee of respondent, Frances Tomlinson, to give legal advice and prepare Court documents without supervision, in violation of DR3-101(A);

2. Knowingly using perjured testimony or false evidence in a Court proceeding, in violation of DR7-102(A)(4);

3. Participating in the creation and preservation of evidence which respondent knew to be fraudulent, in violation of DR7-102(A)(6);

4. Assisting a client of respondent, Jeane Petersen Giordano, in conduct that he knew to be fraudulent, in violation of DR7-102(A)(7);

5. Failing to reveal to the Court the fraud of respondent's client when he received notice of the fraud, in violation of DR7-102(B)(1); and

6. Failing to cooperate with the Committee in its investigation by refusing to

answer written interrogatories under oath, in violation of DR1103(C).

With respect to the first charge, the Panel is of the opinion that there was insufficient evidence to find the respondent guilty.

With respect to the second charge, the respondent has in effect admitted to knowingly using false evidence in a court proceeding. The respondent readily admitted that he was the notary public on an affidavit of appearance of Anthony R. Giordano in a divorce action that he had brought on behalf of Jeane Petersen Giordano. The respondent further admitted that he notarized the affidavit of appearance of Mr. Giordano even though he had never met Mr. Giordano and did not see him sign the affidavit of appearance. Respondent further admitted that he knew it was wrong for him to do so, but claimed as an excuse that his secretary had talked him into it. While respondent indicated that at the time he did so he knew it was wrong to have notarized the affidavit of appearance, he evidenced no awareness that this made him guilty of any ethical violation whatsoever. Clearly, the false execution of this affidavit of appearance by him as a notary public involved the knowing use of false evidence by him as an attorney in violation of DR7–102(A)(4), as well as his participation in the creation of evidence which he knew to be fraudulent in violation of DR7–102(A)(6). The respondent admitted that Mr. Giordano had not appeared before him on the day and year set forth in the affidavit of appearance.

With respect to the fourth charge, assisting a client, Jeane Petersen Giordano, in conduct that respondent knew to be fraudulent, in violation of DR7–102(A)(7), the Panel finds there to be insufficient evidence that respondent knew that Mr. Giordano had not signed the affidavit of appearance. For this reason, the fifth count of the charges also fails for insufficiency of proof.

With respect to the sixth charge, the Panel also finds that there was insuffi-

cient evidence upon which to find the respondent guilty of failing to cooperate with the Committee.

Accordingly, the Panel recommends that the respondent be disciplined by the Supreme Court for violation of DR7–102(A)(4) and (6).

On August 7, 1984 the Respondent filed with this Court his Exceptions to the Findings of Fact and Conclusions of Law of the Board, wherein the Respondent denied wrongdoing and requests that this Court dismiss the recommendations of the Board.

## NO. 38, 1985

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Special Panel of the Board of Professional Responsibility, composed of A. Dean Betts, acting as Chairman, Myron T. Steele, Joseph W. Maybee and Richard F. Stokes, finds disciplinary action to be warranted after hearing charges advanced in this cause on March 15, 1984. The Findings of Fact and Conclusions of Law are as follows:

### FINDINGS OF FACT

1. John B. Kennedy, Esquire, undertook to represent Larry and Julia Lambert in a personal injury case resulting from an automobile accident. As part of his retainer agreement, Mr. Kennedy required the payment of 40% of any amounts of money collected for Personal Injury Protection Benefits. In the course of his representation, he filed a claim for Personal Injury Protection Benefits which was paid by the responsible insurance carrier, without objection and in a routine manner. After the payment of the PIP claim by the carrier, Mr. Kennedy deducted 40% from the no fault proceeds as his fee on this aspect of the case.

2. At the hearing of March 15, 1984, Mr. Kennedy admitted that his 40% contingency fee agreement for collection of Personal Injury Protection Benefits was

clearly excessive. According to Mr. Kennedy, the amount collected by him was refunded to the Lamberts. Whether this is accurate or not is a subject to be taken into consideration in determining discipline.

## CONCLUSIONS OF LAW

Respondent, John B. Kennedy, Esquire, charged a clearly excessive fee in his retainer agreement wherein 40% of any Personal Injury Protection Benefits was deducted as fee, in violation of DR2–106(B), and for such misconduct, the Special Panel unanimously recommends that he be disciplined.

Dated the 13th day of September, A.D. 1984.

The respondent has failed to file objections to the Board's Final Report pursuant to Board Rule 9E and has, by letter dated March 18, 1985, informed the Court that Respondent does not intend to submit any further matters to the Court concerning this case.

## NO. 144, 1985

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On June 29, 1984, the above matter came on for a hearing before a Panel of the Board on Professional Responsibility consisting of A. Dean Betts, Chairman, Joseph H. Maybee, Charles F. Richards, Jr., and Myron T. Steele. The Respondent was charged with violating the Code of Professional Responsibility in the following respects:

1. He charged a clearly excessive fee for representation of Michael Campbell in violation of DR2–106(A).

2. He failed to inform his client of the fact that the State was going to reduce the charges pending against him when he knew that to be the fact in violation of his legal obligation and duty to inform his client of that fact in violation of DR7–102(A)(3).

3. He knowingly made a false statement of fact to his client indicating that if the client did not pay him, he would go to jail in violation of DR7–102(A)(5).

4. He engaged in deceit and misrepresentation when he told his client and/or his client's mother that he would go to jail if he did not pay his fee in violation of DR1–102(A)(4).

5. He neglected this legal matter entrusted to him by not preparing for his client's trial in violation of DR6–101(A)(3).

6. He failed to cooperate with the Board in its investigation of this matter in violation of DR1103.

With respect to the first charge, the Panel is of the opinion that there is insufficient evidence to find the Respondent guilty.

With respect to the second charge, the facts show that Respondent failed to advise his client that the pending charges would be reduced when the Respondent, in fact, had such knowledge from the Attorney General prosecuting the case sometime prior to the date of the scheduled hearing. Respondent did not advise his client of the reduced charges until the date of the scheduled hearing. This conduct is in violation of DR7–102(A)(3).

As to the third charge, the Panel finds there to be insufficient evidence to find the Respondent guilty.

As to the fourth charge, the Panel finds that he did engage in deceit and misrepresentation when he told his client's mother that his client would go to jail if he did not pay his fee in violation of DR1102(A)(4).

As to the fifth charge, the Panel finds that he neglected this legal matter entrusted to him by not preparing for his client's trial prior to the date of the trial in violation of DR6–101(A)(3).

As to the sixth charge, the Panel finds that he failed to cooperate with the Board in its investigation of this matter for failure to honor a subpoena and answer interrogatories in violation of DR1–103, for which the Respondent should be disciplined.

The Panel further finds that he is in contempt of the Supreme Court of Delaware for wilfully failing to respond to subpoena and interrogatories properly served upon him and properly issued pursuant to authority granted the Board by rules adopted by the Supreme Court. [Supreme Court Rule 63(b) and Board on Professional Responsibility, Rules 8, 13.] The Panel recommends that the Respondent be disciplined.

Dated the 25th day of March, A.D. 1985.

The Respondent, on May 7, 1985, filed with this Court his exceptions to the Board's findings of fact and conclusions of law pursuant to Board Rule 9(e) in which Respondent denied each finding of the Board.

## NO. 145, 1985

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Special Panel of the Board on Professional Responsibility, composed of A. Dean Betts, acting as Chairman, Joseph W. Maybee, Charles F. Richards, Jr., and Myron T. Steele, finds disciplinary action to be warranted after hearing charges advanced in this cause on June 29, 1984. The Findings of Fact and Conclusions of Law are as follows:

### FINDINGS OF FACT

1. John B. Kennedy was attorney for James R. Vane in a civil matter filed in Justice of the Peace Court No. 13, which was scheduled for trial on April 28, 1983. The hearing initially scheduled for 10 a.m. was delayed. During the period of delay, Mr. Kennedy asked for and was granted leave to attend another matter in the Family Court but was to return at a fixed interval of time. Mr. Kennedy failed to return to Court No. 13 within the designated time span. The sitting judge who was hearing the case, Robert S. Jackson, Sr., convened the Court and proceeded with the civil hearing in the absence of Mr. Kennedy.

2. Upon his return to the Court, at which time the trial was in progress, Mr. Kennedy entered the courtroom and disrupted the proceeding by requesting his client to step down from the witness stand without first seeking leave of Court to do so, and in fact, in no way properly addressing the Court at that time.

3. During the following time span of approximately fifteen (15) minutes, Mr. Kennedy was argumentative to the Court, continued to disrupt the proceedings, spoke in a disrespectful manner and ignored the admonition of the Court to remain silent and be seated.

4. Mr. Kennedy ignored the Court's instructions to remain seated and remain in the courtroom but left the courtroom in total defiance of the Court's admonition.

5. As a result of the conduct of Mr. Kennedy, he was held in criminal contempt by the sitting Judge and subsequently fined a sum of $25.00.

6. The conduct of Mr. Kennedy was such that the civil trial which had begun somewhere between the hours of 11:15 a.m. and 11:50 a.m. was totally disrupted and was not permitted to proceed until sometime after the hour of 1:30 p.m. of the same date.

### CONCLUSIONS OF LAW

Respondent, John B. Kennedy, did engage in undignified and discourteous conduct which was degrading to the Court in violation of DR7–106(C)(6), for which the Committee recommends discipline.

Dated the 25th day of March, A.D. 1985.

The Respondent filed with this Court on May 7, 1985 Respondent's exceptions to the Board's findings of fact and conclusions of law pursuant to Board Rule 9(e) in which Respondent denied the Board's findings and conclusions and prays that this Court dismiss the Board's recommendations.

**NOS. 204 and 205, 1982**

**NOS. 60 and 75, 1983**

On March 19, 1985 Disciplinary Counsel filed a Motion to appoint a receiver and for entry of an order to show cause why respondent should not be held in contempt of this Court's order of January 24, 1984 suspending respondent, John B. Kennedy, from the practice of law in this State in which the Court directed:

[D]uring the period of suspension, Kennedy shall not (a) engage in any activity whatsoever as a member of the Delaware Bar; ... (f) maintain or occupy any office designated as a law office; and ... without limiting the foregoing, the latter restriction specifically requires Kennedy to (1) remove immediately from any premises any sign bearing his name as an attorney and (2) remove immediately from any premises maintained or occupied by him any sign indicating usage as a law office.

\* \* \* \* \* \*

[W]ithin thirty (30) days of today's date, Kennedy shall notify or cause to be notified by registered or certified mail, return receipt requested; (a) all clients being represented in pending matters ... The required notice shall advise of this Court's ruling and that Kennedy is disqualified to act as a lawyer after today's date....

It is further ordered that within thirty (30) days, Kennedy shall deliver to all clients being represented in pending matters any papers or other property to which the client is entitled.... In addition, within the said thirty (30) day period, Kennedy shall refund any part of any fees paid by a client in advance which have not been earned to date. *In Re Kennedy*, Del.Supr., 472 A.2d 1317, 1334–5 (1984).

The Court further directed Kennedy to file within thirty days of the Court's Order of Suspension an affidavit showing full compliance with the mandate of the order.

In addition, the Order of Suspension further provided:

In the event that Kennedy fails to comply with the conditions set forth regarding the thirty (30) day period or upon evidence he has failed to continue complying with any other conditions of his suspension, this Court upon proper proof shall appoint a receiver with such powers as this Court shall direct.

472 A.2d at 1335.

In her Motion Disciplinary Counsel asserts:

1. In violation of the Order of Suspension, Kennedy failed to remove immediately from his offices signs bearing his name as an attorney and signs indicating their usage as law offices. Photographs taken of Kennedy's offices located at 1400 Market Street in Wilmington, Crossroads Shopping Center in New Castle, and Philadelphia Pike and Harvey Road in Claymont on April 10, 1984, more than seventy days after entry of the Order of Suspension, show signs bearing his name as an attorney and signs identifying the premises as a law office. (Fiorelli Affidavit.) Although Kennedy subsequently removed the signs, he violated the Order of Suspension by failing to do so immediately.

2. In investigating various complaints made by Kennedy's former clients, Disciplinary Counsel has found numerous other instances of Kennedy's failure to comply with the Order of Suspension. Specifically, Kennedy:

(a) *Failed to notify all clients of his suspension by certified or registered mail.* In some instances, Kennedy failed to notify his clients in any manner. In other instances, he called clients into his office after his suspension and had them sign a statement acknowledging that they had been advised of his suspension.

(b) *Failed to return to his clients unearned fees.* Kennedy has failed and refused to refund unearned fees. In several instances, a retainer was col-

lected by Kennedy just a few days or weeks prior to his suspension; yet he failed to refund any portion of the retainer.

(c) *Failed to return to his clients their papers and files*, frequently jeopardizing his former clients' ability to protect their legal rights. Kennedy has been exceedingly slow in returning files (sometimes taking months to respond to former clients' demands for the return of their papers) or he has been unable to locate files at all. In one instance, Kennedy demanded that his client sign a statement acknowledging that he was satisfied with the services rendered and the fees charged before Kennedy would hand over the client's papers. On numerous occasions, Disciplinary Counsel has asked Kennedy to produce a particular former client's file and has been advised by Kennedy that it cannot be located. Kennedy has advised Disciplinary Counsel that he has "thousands" of files located at his 1400 Market Street office in Wilmington and he simply cannot locate files when requested to do so by Disciplinary Counsel.

(d) *Engaged in activities as a member of the Delaware Bar.* Vince Rowan retained Kennedy on January 21, 1984 to form a Delaware corporation named A.R.V. Corporation. Later, Mr. Rowan changed his mind and left a message with Kennedy's office that he should not proceed with the incorporation. Nevertheless, a certificate of incorporation of A.R.V. Company, Inc. was filed with the Secretary of State by Kennedy's office on April 25, 1984. Mary Rutkowski retained Kennedy on January 21, 1984 to investigate a possible claim of harassment. Her file reflects that in connection with this representation, Kennedy wrote a letter dated January 25, 1984 (the day after the Order of Suspension) to Bendix Corporation. Also in her file is a memorandum dated January 30, 1984 reflecting that Kennedy had spoken with this client concerning the case on that date.

Affidavits in support of these assertions have been submitted by Disciplinary Counsel and are a part of the record submitted for this Court's consideration without objection.

3. Disciplinary Counsel further asserts that:

(a) Kennedy has violated repeatedly the Order of Suspension by failing to notify clients of his suspension and failing (and in some instances refusing) to return to clients unearned fees and their papers.

(b) It appears that Kennedy has no means of refunding unearned fees. Sometime before February 7, 1984, days after his suspension, in an apparent attempt to place assets beyond the reach of creditors, he transferred several pieces of real property formerly held in his name to himself and his wife jointly. On February 12, 1985, Kennedy's deposition in aid of execution was taken by Stephen B. Potter, Esquire on behalf of Mr. Potter's client, Mr. Thomas. At that deposition Kennedy testified:

Q. Is it fair to say that all of the deeds were transferred on or about February 7th, 1984?

A. I believe so.

Q. Is it fair to say that all of the deeds, prior to being transferred into the name of you and your wife, were held in your own name alone?

A. I believe so, yes.

Q. Was there any business purpose in transferring the deeds—

A. No.

Q. —on February 7, 1984?

A. No, other than put it in both my wife and myself's name.

Q. Is it fair to say that all of those deeds were transferred, then, essentially, to insulate yourself against being vulnerable to the claims of vendors?

A. No, sir.

Q. What other reason is therefor the transfer of the properties into your name and your wife's name?

A. Well, they are property held by tenancy by the entirety.

Q. Before—

A. Let me finish your question. I never got around to doing it, so we did it at this time.

Kennedy Deposition, pp. 6–7.

Kennedy testified that many of the properties which were transferred are rental properties and that he and his wife collect rents either in cash or by check. Despite this, Kennedy contends that he has no income out of which to pay his debts.

Q. It is your contention that you are unable to pay the debt that is due against you in connection with the claim of David Thomas out of current assets, and there are not assets that you have in your name alone which could be sufficient to pay out these debts?

A. I have no income.

Q. Of the income of this what you say is a husband and wife partnership?

A. That's correct, sir.

4. Disciplinary Counsel further asserts that despite Kennedy's brazen violations of the Order of Suspension,—his failure to remove the offending signs from his offices, his failure to notify clients of his suspension in the manner prescribed by the Court, his failure and refusal to return to clients their papers, his failure and refusal to refund unearned fees, his engaging in activities as a member of the Delaware Bar—on February 21, 1984, Kennedy filed an affidavit with this Court stating that he had complied with the order. This is a totally false statement which Kennedy knew full well to be false when he made it.

WHEREUPON, Disciplinary Counsel petitions the Court to enter an order:

A. Appointing a receiver whose functions would include returning to Kennedy's former clients their papers and files, liquidating Kennedy's assets, filing a petition to set aside Kennedy's fraudulent conveyances of his real property and refunding from any fund accumulated unearned fees upon proper proof that former clients are entitled to such a refund; and

B. Finding Kennedy in contempt by virtue of his noncompliance with the Order of Suspension and his filing of an affidavit falsely stating that he had complied, and imposing appropriate sanctions for that contempt.

On March 21, 1985 this Court issued its Order to show cause, and all matters then pending for review by this Court were heard in open court on June 27, 1985 with Respondent being present and represented by counsel. At that hearing of June 27th counsel for Respondent made no effort to contest Disciplinary Counsel's assertions and the Board's conclusions generally although offering specific excuses and mitigating factors based on the number of clients involved, filing deficiencies, time, personal contact rather than notification by mail, inability to contact, partial payment of amounts due, full payment unacceptable to the client, and other denials of error or violations.

Having duly considered the Board's findings of fact, conclusions of law and recommendations for disciplinary action by this Court in Nos. 9, 56, 264, 314, 1984 and Nos. 38, 144, 145, 1985 and Respondent's offerings in excuse and mitigation, we affirm the Board's findings, conclusions and recommendations. We also find that Respondent violated this Court's Order of Suspension dated January 24, 1984 and filed a false affidavit of compliance dated February 17, 1984. In mitigation we note Respondent's present efforts to correct at least some of his transgressions. However, in our opinion Respondent's efforts do not excuse the errors of his ways which have been the source of never ending consternation and concern to the public, the Judiciary and Bar of this State since Re-

spondent's admission to the Bar in 1974. See *In Re Kennedy,* Del.Supr., 472 A.2d 1317 (1984). In fact, Respondent has been the subject of more disciplinary charges to date than any known member of the Delaware Bar since its inception. Not all charges against Respondent have warranted disciplinary action by any means. But more than a few have culminated in disciplinary action, evidencing a pattern of conduct falling far short of a lawyer's duty to protect the public and uphold the integrity and professional reputation of the Bar. Respondent's pattern of behavior has reached a point where drastic action must be taken regarding his fitness to practice law. Respondent has clearly demonstrated by his conduct that he is unfit to continue in the capacity of an officer of this Court imbued with public trust in the proper administration of justice. Upon the basis of the foregoing this Court concludes that the Respondent should be disbarred from the practice of law.

NOW, THEREFORE, IT IS ORDERED:

(1) That John B. Kennedy be and he is hereby disbarred, that his name be and it is hereby stricken from the Roll of Attorneys of this Court, and that his authority to practice law in the State of Delaware, and the Courts thereof, be and it is hereby revoked; and

(2) That this Opinion and Order be disseminated by Disciplinary Council in accordance with Rule 3 and Rule 14 of the Rules of the Board on Professional Responsibility.

(3) Charles C. Crompton, Jr., Esquire, is hereby appointed to act as a special trustee in accordance with the joint proposal made to this Court by Respondent and Disciplinary Council attached hereto as Exhibit "A".

(4) No application for reinstatement to the Bar will be entertained by this Court prior to the expiration of five years from the date of disbarrment and payment in full of all costs incurred in these matters leading initially to Respondent's suspension and now disbarrment in the amount of $1,633.95.

EXHIBIT A

OFFICE OF DISCIPLINARY COUNSEL BOARD ON PROFESSIONAL RESPONSIBILITY SUPREME COURT OF THE STATE OF DELAWARE

August 12, 1985

John B. Kennedy
1400 Market Street
Wilmington, DE 19801

RE: In the Matter of John B. Kennedy, a Member of the Bar of the Supreme Court of the State of Delaware, Nos. 204 & 205, 1982 and Nos. 60 & 75, 1983

Dear Mr. Kennedy:

The following reflects our joint proposal to the Supreme Court concerning the refund of unearned fees to former clients:

(1) A member of the Delaware Bar shall be appointed by the Court to act as a special trustee to determine the appropriate amount of any refund owed by Mr. Kennedy to former clients for unearned fees which should have been refunded by Mr. Kennedy pursuant to the Court's order of January 24, 1984.

(2) Mr. Kennedy has contacted Charles S. Crompton, Jr., Esquire who has agreed to serve as special trustee, subject to the Court's approval.

(3) The special trustee shall make a determination as to the appropriate amount of a refund in each case based upon written statements submitted by the former client and Mr. Kennedy. However, if the special trustee, in his discretion, deems it necessary, Mr. Kennedy shall make available to the special trustee his file concerning his representation of the former client and the special trustee may conduct an informal hearing.

(4) Disciplinary Counsel shall notify all former clients who have made or make complaints to the Office of Disciplinary Counsel concerning unearned fees of this procedure.

(5) The determination of the special trustee shall be final and not subject to appeal. The special trustee shall be immune from suit for any conduct in the course of his duties as special trustee.

(6) The special trustee shall be authorized to issue refunds in accordance with his determinations. Refunds will be issued from an account established and maintained by the special trustee and funded by Mr. Kennedy. Initially, Mr. Kennedy shall deliver $3,000.00 to the special trustee for deposit in the account. In the event that it appears to the special trustee that there will be or are insufficient funds in the account to cover refunds which he has determined to be appropriate, he shall so advise Mr. Kennedy and Disciplinary Counsel. Mr. Kennedy shall replenish the account in $500.00 increments at the request of the special trustee. If Mr. Kennedy contends that he is not in a position to do this, he shall so advise the special trustee and Disciplinary Counsel. Disciplinary Counsel may renew at any time the motion for appointment of a receiver filed with the Supreme Court on March 19, 1985.

(7) Whenever it appears to the special trustee that all former clients of which he and the Office of Disciplinary Counsel have knowledge have received the appropriate refund, if any, the special trustee shall return the balance of the funds remaining in the account to Mr. Kennedy. The return of any remaining balance shall be made by the special trustee when he, in his discretion, deems it appropriate. If Mr. Kennedy believes that claims for all unearned fees have been disposed of and that the special trustee has no need to maintain the account but refuses to return the remaining funds, Mr. Kennedy may apply to the Supreme Court for an order directing the special trustee to refund the balance to Mr. Kennedy and to dissolve the account.

Please sign below indicating that you agree that this proposal should be submitted to the Court for its consideration in connection with the above-captioned matter. Return the executed original to me as soon as possible. (A copy is enclosed for your records.)

> Sincerely,
> /s/ Susan Faw
> L. Susan Faw

LSF:era

APPROVED AND AGREED TO:

/s/ John B. Kennedy
John B. Kennedy