**In the Matter of C. Waggaman BERL, Jr., Esquire, A Member of the Bar of the Supreme Court of the State of Delaware.**

Supreme Court of Delaware.

Submitted: Sept. 15, 1987.
Decided: April 4, 1988.
Rehearing Denied May 2, 1988.

Sidney Balick (argued), of Sidney Balick & Associates, Wilmington, for C. Waggaman Berl, Jr.

L. Susan Faw (argued), Disciplinary Counsel, Bd. on Professional Responsibility, Wilmington.

Before HORSEY, MOORE and WALSH, JJ.

PER CURIAM:

In this disciplinary proceeding, the Board on Professional Responsibility of the Supreme Court of the State of Delaware (the "Board"), following evidentiary hearing, found that respondent, C. Waggaman Berl, Jr., Esquire, violated Rules 1.4(b) and 1.5(e)(1) of the Delaware Lawyers' Rules of Professional Conduct. The Board found that Berl had violated Rule 1.4(b) by failing to advise Dennis Robinson of the fee limitations of 18 *Del.C.* § 6865 after Robinson had contacted Berl concerning representation in a claim for medical malpractice.[1] The Board also found Berl to have violated Rule 1.5(e)(1) by participating in a fee division with Robinson's attorney of record under a fee sharing arrangement which the Board found not to be proportionate to the services rendered by Berl as required by the Rule in the absence of a written agreement with Robinson.[2] Pursuant to the Board's authority under Board Rule 1(c)(5) and 8(a)(5), the Board concluded that the appropriate sanction was that Berl be publicly reprimanded by the Board.

Berl appeals both Rule violation findings by the Board as well as the sanction imposed, contending that he has not violated either Rule. Should the Board be upheld,

---

1. Rule 1.4 provides:

**Rule 1.4 Communication**

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

2. Rule 1.5 provides:

**Rule 1.5 Fees**

(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

\* \* \* \* \* \*

(e) A division of fee between lawyers who are not in the same firm may be made only if:

(1) the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation.

(2) the client is advised of and does not object to the participation of all the lawyers involved; and

(3) the total fee is reasonable.

Berl asks that his sanction be reduced to a private admonition.

After carefully reviewing the Board's decision, including its findings of fact and conclusions of law, we conclude that we must affirm as to the Rule 1.5(e)(1) violation but reverse and remand for insufficiency of the record to support the Board's finding of Berl's violation of Rule 1.4(b). A Rule 1.4(b) violation cannot be sustained without more particularized findings by the Board establishing that Berl, at a particular time, came under a lawyer-client relationship with Robinson from which a duty arose to inform Robinson of the application and relevance of section 6865, notwithstanding Robinson's relationship with his attorney of record.

I

We first summarize the Board's Findings of Fact from which it concluded that Berl violated Rule 1.4(b) and Rule 1.5(e). In November 1983, Robinson "contacted" Berl with respect to a medical malpractice claim against a Delaware physician and hospital. Berl reviewed some of Robinson's medical records but shortly concluded that he did not wish to represent Robinson in a claim against the physician because of a close relationship between Berl and the physician. By December 1983, Berl had referred Robinson's claim to a Philadelphia attorney, Stephen A. Sheller.

The subject of attorney fee arrangements never arose between Berl and Robinson, beyond Berl's telling Robinson that he [Robinson] would have to work out an appropriate fee arrangement between himself and Sheller. Neither Robinson nor Berl has any recollection of Berl's having informed Robinson of the existence of Delaware statute law, 18 *Del.C.* § 6865, placing

limitations on attorney's fees chargeable in a medical malpractice claim.[3]

Berl was well aware of section 6865 and it was Berl's practice when taking a case to advise his client of section 6865. Berl would then enter into a fee agreement with his client, later confirmed in writing, under which his fee would fully comply with section 6865 whether the case were ultimately settled or tried to judgment.

After Berl referred Robinson to Sheller, Robinson had no further contact with Berl. Robinson considered Sheller his attorney and looked entirely to Sheller for advice concerning his interests. Sheller and Robinson then entered into a written contingent fee agreement of which Berl only later learned. Under its terms, Sheller was to receive 40% of any net recovery by Robinson, that is, net after all Sheller's costs and expenses.

Sheller did not advise Robinson of the specific fee limitations in section 6865, though the record indicates that Sheller was aware of the statute and, according to Sheller, he advised Robinson that Delaware (unlike Pennsylvania) had a fee limitation statute. Sheller did not believe that section 6865 applied to fees fixed by him as a Pennsylvania lawyer even as to a claim that arose in Delaware, as was the case.

In preparing Robinson's suit, Sheller elected to file in the United States District Court for the District of Delaware. In mid-February 1984, Sheller asked Berl to assist him in drafting the complaint and in securing a Delaware attorney to act as "local counsel" in the suit with limited responsibility. Berl recommended a Delaware attorney who agreed to perform this limited role. Berl also drafted a complaint for filing by Sheller in the Delaware Dis-

---

3. 18 *Del.C.* § 6865 provides:

§ 6865. Limitation on attorney's fees.

(a) The amount of the claimant's attorney's fees may not exceed the amounts in the following schedule:

(1) 35% of the first $100,000 of damages;

(2) 25% of the next $100,000 of damages;

(3) 10% of the balance of any awarded damages.

(b) Notwithstanding subsection (a) of this section, a claimant has the right to elect to pay for

the attorney's services on a mutually satisfactory per diem basis. The election, however, must be exercised in written form at the time of employment.

Section 6865 is a component part of landmark legislation enacted in Delaware in 1976 relating to "Health Care Malpractice Insurance, Litigation and the Revision of Judicial Process concerning Health Care Malpractice Claims." 60 *Del. Laws*, c. 373.

trict Court. In a letter of transmittal to Sheller dated February 17, 1984, Berl stated, *inter alia*, "We are still relatively uncertain as to just what negligence is involved...."

In March 1984, Sheller filed suit on Robinson's behalf and the record indicates that Berl advanced the court deposit fee. Local counsel's role was limited to assisting Sheller in court filings and keeping him currently informed of any case activity.[4] In contrast, Berl, in the Board's words, "remained interested" in the case; and Sheller continued to consult with Berl from time-to-time about the case.

In December 1985, Sheller settled Robinson's suit against both the physician and hospital for the sum of $270,000. Sheller conducted the negotiations. When settlement appeared likely, Sheller contacted Berl to discuss fees. Sheller offered to share his fee with Berl and local counsel by giving them one-third of whatever Sheller's fee worked out to be and letting them divide their one-third share as they chose.[5] Berl (and presumably local counsel) agreed to Sheller's fee proposal.

From the net proceeds of the settlement of Robinson's case, Sheller collected $104,660.30 as his 40% fee, pursuant to his contingent fee contract with Robinson. In accordance with his previous understanding with Berl, Sheller gave Berl one-third of Sheller's fee, to be divided between Berl and local counsel as they saw fit. At Berl's suggestion, local counsel took one-third ($11,628.92) and Berl took two-thirds ($23,257.84).

On essentially these findings, the Board found that Berl violated Rule 1.4(b) and Rule 1.5(e) by proof that was clear and convincing, as required by Board Rule 15. The Board concluded that the appropriate sanction for Berl's misconduct "in the course of a lawyer-client relationship" was a public reprimand by the Board. Berl

then exercised his right, as provided under Board Rule 8(a)(5), to request review by this Court of the Board's findings and sanction.

## II

■ This Court's scope of review of the Board's findings of fact is limited to a determination of whether the record before the Board contains substantial evidence to support those findings. *Matter of Lewis,* Del.Supr., 528 A.2d 1192, 1193 (1987). Our standard of review of the Board's conclusions of law is *de novo. Cf. Olney v. Cooch,* Del.Supr., 425 A.2d 610, 613 (1981). In contrast, the standard of proof required of the Board to find a violation of the Rules of Professional Conduct is by clear and convincing evidence. *See* Rule 15 of the Board on Professional Responsibility.

### A. *Rule 1.4(b)*

Berl asserts alternate grounds for reversal of the Board's finding that he breached his duty under Rule 1.4(b) "by failing to advise Robinson of the fee limitations" of 18 *Del.C.* § 6865. Assuming that Rule 1.4(b) encompasses fee arrangements (which Berl disputes), Berl reasons that a lawyer's duty to communicate under Rule 1.4(b) runs only to a client and hence presupposes, for the duty to arise, the existence of a lawyer-client relationship.

Berl argues that the Board's finding of his Rule 1.4(b) violation cannot be sustained absent a finding of a lawyer-client relationship between him and Robinson. Berl says the evidence of their pre-referral contacts permits only one conclusion, that no such relationship arose because he expressly declined to take Robinson's case once he discovered from Robinson's hospital records the identity of the doctor against whom the medical malpractice claim would be asserted. With respect to

---

4. The Board ultimately found local counsel to have had no reason to know that Robinson had not been advised, either by Berl or by Sheller, of the terms of the Delaware medical malpractice statute placing limits on claimant's attorney fees.

5. Sheller had no written employment agreement with Robinson allocating joint responsibility for Robinson's representation among the three attorneys. Therefore, under Rule 1.5(e)(1) a division of fees between the three attorneys was required to be in proportion to the work done by each.

his legal relationship with Robinson after the referral to Sheller, Berl contends that the record is clear that Berl had absolutely no contacts with Robinson, only with Sheller. Hence, Berl argues that no implied lawyer-client relationship can be found to have arisen between Berl and Robinson through Berl's subsequent work on the case for Sheller. Since the Board has failed to establish by clear and convincing evidence that a lawyer-client relationship did in fact exist between Berl and Robinson, Berl seeks dismissal of the Rule 1.4(b) charge.

Disciplinary Counsel disagrees that the Board's findings are inadequate or that the record is insufficient to sustain the Board's finding of Berl's Rule 1.4(b) violation. Disciplinary Counsel argues that a lawyer-client relationship can be found to have arisen between Berl and Robinson before as well as after Berl's referral of Robinson to Sheller. Counsel suggests that the Board impliedly found a lawyer-client relationship to have arisen between Berl and Robinson from their pre-referral contacts, notwithstanding Berl's refusal to represent Robinson. Disciplinary Counsel also contends that Berl's post-referral work on Robinson's case was sufficient to impose a Rule 1.4(b) duty of disclosure of section 6865 upon Berl, notwithstanding the lack of contact between Berl and Robinson and Robinson's belief that Sheller was his attorney and that Berl was no longer involved in the case.[6]

■ Our Rules of Professional Conduct stem from and presuppose the existence of a lawyer-client relationship. The preamble to the Rules states: "Most of the duties flowing from the client-lawyer relationship attach only after the client has requested the lawyer to render some legal services and the lawyer has agreed to do so." This is not to say that a lawyer-client relationship may not be found by inference drawn from the conduct of the parties. *Connelly*

*v. Wolf, Block, Schorr, and Solis–Cohen,* E.D.Pa., 463 F.Supp. 914, 919 (1978). Thus, whether a lawyer-client relationship arises depends on the facts, circumstances, and findings in a particular case.

■ Here, the Board found that "Berl violated Rule 1.4(b) of the Rules of Professional Conduct by failing to advise Robinson of the fee limitations specified in 18 *Del.C.* § 6865." However, this finding is not explained or enlarged upon by the Board, nor does the Board explicitly find that Berl was then under a lawyer-client relationship with Robinson from which this duty of communication arose. The Board, in the final paragraphs of the Report dealing with the matter of appropriate discipline concludes that Berl should be "publicly reprimanded ... for the aforesaid misconduct occurring in the course of a lawyer-client relationship." However, we find this bare statement to be too conclusory and lacking in specificity to constitute an articulable finding of a lawyer-client relationship supported by substantial evidence. The statement is of no assistance in determining whether the Board found Berl's breach of his Rule 1.4(b) duty to Robinson to have occurred during their pre-referral "contacts" or to have occurred during Berl's post-referral work on the case with Sheller. Nor does the statement disclose the Board's reasoning in finding such a relationship.

The Board's explicit reason for not finding local Delaware counsel for Robinson to be under a Rule 1.4(b) duty to advise Robinson of section 6865 was counsel's lack of "contact with Robinson concerning the subject of fees." This emphasis upon "contact" suggests that the Board's converse finding as to Berl was based on Berl's "contacts" with Robinson—all of which were pre-referral. However, the record reveals those contacts to have been tenuous, inconclusive, and of short duration.[7]

---

**6.** Disciplinary Counsel contends that, "Berl could not properly refer his client [Robinson] to out-of-state counsel (who was unfamiliar with Delaware medical malpractice law and relied on Berl for guidance in this area), ... without explaining the statute at the point of referral

and at the time of consideration of the settlement offer."

**7.** A careful review of the record discloses that Robinson's "contact[s]" with Berl were limited to one letter of inquiry from Robinson and

On the other hand, the Board may have based its finding of Berl's violation of Rule 1.4(b) on his post-referral work with Sheller on Robinson's case and notwithstanding Berl's lack of any contacts with Robinson or Robinson's knowledge that Berl was performing any services on his behalf. Thus, the Board may have concluded that by Berl's consulting with Sheller on issues of Delaware malpractice law in the case, by Berl's drafting of certain legal documents, including the complaint, by Berl's advancing certain costs of litigation, and by Berl's receipt of a fee which was partially attributable to those services, an attorney-client relationship arose between Berl and Robinson at some point after Robinson was referred to Sheller. If this were the Board's basis for finding a lawyer-client relationship to have arisen at that juncture of the case, the Board has not addressed the question of how Berl should have discharged his duty to Robinson while recognizing Robinson's relationship with Sheller.

However, our role is not to be that of a fact finder. Our standard of review precludes us from determining what we find to be the pivotal issue underlying Berl's alleged Rule 1.4(b) breach of duty to communicate—when, if ever, did a lawyer-client relationship arise between Berl and Robinson and what were the resulting duties or responsibilities of Berl to Robinson, bearing in mind the Sheller–Robinson relationship. For present purposes, on the basis of the existing record and given the unclear findings of the Board, we conclude that we must reverse as to the Board's finding of Berl's violation of Rule 1.4(b) and remand the matter to the Board for more specific findings of fact regarding the existence of an attorney-client relationship if a Rule 1.4(b) violation is to be sustained.

### B. *Rule 1.5(e)(1)*

■ From the outset of this case and at oral argument, Disciplinary Counsel has taken the position that the primary issue in this disciplinary matter is whether Berl improperly shared in a fee division in violation of Rule 1.5(e)(1). The Board found that Berl violated Rule 1.5(e)(1) because his portion of the fee division was not based "solely" on a proportional weighing of services as required by the Rule. The Board then found that the size of Berl's fee took into consideration two impermissible extraneous matters: Berl's referral of Robinson to Sheller and Berl's work on other matters with Sheller.

From an after-the-fact letter from Berl to Disciplinary Counsel dated June 16, 1986, the Board also found that Berl "was aware" that the one-third division of Sheller's fee took into consideration Berl's referral of the Robinson case and work by Berl on other cases for Sheller. Hence, the division was admittedly not based solely on a proportional weighing of Berl's services in the Robinson matter. From Berl's testimony, the Board also concluded that Berl "understood that, in Pennsylvania, a one-third forwarding fee [was] standard regardless of other circumstances." In Berl's June 1986 letter, he stated:

> ... I believed that if the case resulted in a fee, Steve [Sheller] would take into account *not only my assistance on this case and others, but the fact that I referred the case to him.*
>
> As the case went forward, I was called on to consult on issues that pertained to Delaware malpractice law and I assisted in drafting certain legal documents in the case.
>
> \* \* \* \* \* \*
>
> When the case did finally settle, Steve volunteered to give me the portion of the fee that he received by reason of the fact that *I had worked on the case, I had referred the case to him and by reason of my assistance to him in other cases where I had not been compensated.* He

several subsequent long distance telephone calls and letters to Robinson, who then lived in South Carolina. Berl was but one of three Delaware attorneys selected by Robinson from names in a directory and to each of whom Robinson had written letters requesting a review of his claim.

Of the three, Berl was the only attorney who agreed to look into his claim, and that was limited to an examination of Robinson's medical records lodged in Delaware. Berl and Robinson never met until the disciplinary hearing.

felt it was the proper payment under the circumstances.

(Emphasis added by the Board.)

Thus, the Board implicitly found Berl's letter to amount to an admission by Berl that he had shared in a fee on a basis other than services rendered for the benefit of Robinson. On this finding, the Board concluded that Berl had violated Rule 1.5(e)(1) "in that the one-third division of fees with Sheller was not based solely on a proportional weighing of the services performed by each lawyer in the matter" but, as noted, was also based on two other impermissible considerations.

Berl's contest of the Board's conclusion that he violated Rule 1.5(e) focuses largely on the Board's asserted misuse of the word "solely" in its findings. Berl argues that Rule 1.5(e)(1) does not require that a division of fees between attorneys be solely in proportion to the work done. He contends that so long as the fee division is proportional to services rendered, any other considerations are irrelevant. Without the Board weighing and determining the value of the services Berl rendered to Sheller for Robinson's benefit, Berl argues that the Board lacks clear and convincing evidence to find him in violation of Rule 1.5(e)(1). We disagree.

While the word "solely" is not found in Rule 1.5(e)(1), Rule 1.5(e) permits a division of fees (between attorneys not in the same law firm) "only if" the fee is proportional. (*See supra* note 2.) The words "only if" and "solely" may not be synonymous, but under these circumstances the difference is only a matter of degree. By its findings the Board has read Berl's June 16 letter to be an admission that the fee he received was not in proportion to the work he rendered. As noted, the fee took into consideration both Berl's referral of Robinson's case to Sheller and Berl's prior uncompensated services for Sheller in other, presumably unprofitable, cases. The Board's use of the word "solely" in its findings does not alter the fact that Berl admitted receiving a fee that was based on considerations not permitted by the Rule. If the fee included those other considerations, it could not be in proportion to the work done by Berl on only Robinson's case.

■ Therefore, we must agree with the Board that the record establishes by clear and convincing evidence Berl's violation of Rule 1.5(e)(1). The Board was, thereafter, under no further duty to weigh the services Berl rendered against the amount he received. To engage in such a task would have been futile in light of Berl's admission. The Board's finding of Berl's violation of Rule 1.5(e)(1) is supported by substantial evidence.

### C. *The Appropriate Sanction*

■ Berl argues that should we affirm the Board's decision, his sanction should nevertheless be reduced from the Board's recommended public reprimand to a private admonition. On the other hand, Disciplinary Counsel argues that not only is a public reprimand warranted, but Berl should be placed on "probation" and be required to make restitution for having been improperly compensated for services rendered not in proportion to the work done on Robinson's case.

Under Board Rule 8, the Board's authority and discretion to impose sanctions for attorney misconduct is broad and includes the authority to recommend restitution to persons financially injured. Here, however, the Board expressly found that the fee Robinson was charged by Sheller was not unreasonable; the Board declined to find that Berl violated Rule 1.5(a); and the board presumably concluded that restitution was an inappropriate sanction.

Since we have concluded that the matter should be remanded as to the Rule 1.4(b) issue, we defer ruling on the appropriate sanction until the Board has completed its task upon remand and has returned the case to us.

\*　　\*　　\*

Affirmed in part; Reversed in part; and Remanded, with jurisdiction retained.