**In the Matter of a Member of the Bar of the Supreme Court of Delaware Kenneth F. CARMINE.**

Supreme Court of Delaware.

Submitted: February 21, 1989.
Decided: March 21, 1989.

L. Susan Faw, Disciplinary Counsel for the Bd. on Professional Responsibility, Wilmington.

Roderick R. McKelvie, Ashby, McKelvie & Geddes, Wilmington, for Kenneth F. Carmine.

Before CHRISTIE, C.J., and MOORE and HOLLAND, JJ.

PER CURIAM:

This is a Disciplinary Proceeding. The Board on Professional Responsibility ("Board")[1] held hearings involving charges of professional misconduct against the Respondent, Kenneth F. Carmine ("Carmine"). Rules of the Board on Professional Responsibility Rule 9(d). The charges related to Carmine's representation of four separate clients. Following a hearing, the Board submitted "a report containing its findings and recommendations, together with a record of its proceedings" to this Court ("Report"). *Id.* In its Report, the Board found that Carmine violated several provisions of the Delaware Lawyer's Rules of Professional Conduct.

The Report of the Board recommends that Carmine be suspended from the Bar of this Court. After reviewing the Board's Report and the Record of its proceedings, we have concluded that the Board's findings are supported by substantial evidence. In view of the serious nature of the transgressions established in this proceeding, we suspend Carmine from the Bar of this Court for a period of two years.

The Board's findings of fact, conclusions of law, and recommendations, as set forth in its Report, are in pertinent part, as follows:

As to Carmine's representation of his client, Diggins,

(Case. No. 1008):

"Findings of Fact:

1. Mrs. Diggins retained Respondent to defend against a Petition filed by her former husband to reverse the custody agree-

---

**1.** The Board is an agency of this Court, created under Supreme Court Rule 62. *In re Kennedy,* Del.Supr., 472 A.2d 1317, 1318–19 (1984).

ment reached by them in 1981, in which Mrs. Diggins had been the principal custodial parent.

2. On May 12, 1986, the Family Court reversed the prior Order by awarding custody to Mr. Diggins, which Order was received by Respondent on May 16, 1986, but a copy of said Order was not mailed by Respondent to his client until May 21, 1986, and not received by Respondent's client until the time to file a motion for reargument had expired.

3. On June 4, 1986, Respondent and his client agreed that an appeal of the Family Court's Order was to be taken and pursuant to that agreement, Respondent filed a Notice of Appeal with the Superior Court on June 11, 1986. However, Respondent failed to post the bond as required by 10 *Del.C.* § 961(b), (d) [ (1975) (current version at 10 *Del.C.* § 961(b), (c) (Supp.1988) ].

4. Respondent testified that he was well aware of the requirement to post bond and of the jurisdictional defect such failure to post would have on the appeal, and stated he simply forgot.

5. Mr. Diggins moved to dismiss the appeal for failure to post the appropriate bond, which Motion was initially opposed by Respondent and a stipulated brief schedule was filed with the Superior Court.

6. Mr. Diggins' counsel filed his Opening Brief in support of the Motion on July 17, 1986, but Respondent failed to file his answering brief when due on August 31, 1986.

7. On September 9, 1986, a Delinquent Brief Notice was issued by the Superior Court to Respondent and then a subsequent and final Delinquent Brief Notice had to be issued by the Superior Court on October 8, 1986.

8. On October 9, 1986, Mr. Diggins' counsel filed a Motion to Dismiss the Appeal for Respondent's failure to file the answering brief and further requested his attorney's fees be assessed as a cost against Respondent's client.

9. Respondent did not appear in the Superior Court to oppose the Motion to Dismiss the Appeal, nor the request for as-sessment of attorney's fees, and both requests were consequently granted by the Superior Court.

10. Thereafter, Mr. Diggins filed a subsequent Motion with the Family Court requesting his attorney's fees be assessed against Respondent's client (the fees and costs totalled $1,112.63), which Motion was granted on November 20, 1986.

11. Respondent admitted in his Answer that he failed to advise his client that the Appeal had been dismissed and failed to advise his client that a Motion to Dismiss the Appeal was pending based upon Respondent's failure to post the requisite appeal bond.

12. Respondent further admitted in his Answer that he failed to notify his client that the Motions in Superior Court and Family Court to Dismiss the Appeal and for Assessment of Counsel Fees against Respondent's client were pending and then again failed to advise his client when they had been granted by both courts.

13. On December 1, 1986, Mr. Diggins' counsel wrote to Respondent requesting payment of attorney's fees and costs but no response was ever received. Mr. Diggins' counsel again wrote to Respondent on January 5, 1987, this time threatening to file a petition—Rule to Show Cause—against Respondent's client for her failure to pay the fees and costs as ordered. Respondent admitted in his answer that he never advised his client of either of these two (2) letters.

Conclusions of Law:

The burden of proof is upon Disciplinary Counsel to establish charges of misconduct by clear and convincing evidence, Board o[n] Professional Responsibility Rule 15(c), *Matter of Berl*, Del.Supr., 540 A.2d 410, 413 (1988), and the Board's findings must further be based upon clear and convincing evidence.

This Panel finds that Respondent engaged in conduct which forms the basis of finding him in violation of the various disciplinary rules listed in Counts, II, IV, V, VI, VII, VIII and IX, ...

. . . .

4. Count II charges that Respondent failed to act with reasonable diligence in violation of Rule 1.3 [of the Delaware Lawyer's Rules of Professional Conduct [hereinafter 'Rule'] by failing to post a statutorily mandated appeal bond. Respondent has admitted the underlying facts and that those facts support the charge of misconduct. The Board finds that there was sufficiently clear and convincing evidence offered to prove this act of misconduct.

5. (a) Counts IV, V, and VI charge Respondent with failing to keep his client informed in violation of Rule 1.4(a). In particular, Count IV charges he failed to keep his client generally informed about the status of the Appeal, Count V charges that he failed to inform his client that the Appeal had been dismissed and Count VI charges that he failed to advise his client that the Court had ordered her to pay opposing counsel's fees.

(b) Respondent has admitted the underlying facts and that those facts support the various charges of misconduct. The Board finds that there was sufficiently clear and convincing evidence offered to prove each of these acts of misconduct.

6. (a) Count VII charges that Respondent knowingly defended a proceeding when to do so was frivolous by causing opposing counsel to prepare and file an Opening Brief in support of the Motion to Dismiss. Respondent failed to in any way prosecute his defense and, therefore, it would appear that there was never any intent to argue any merits of this position in violation of Rule 3.1.

(b) Respondent has admitted the underlying facts and that those facts support the charge of misconduct. The Board finds there was sufficiently clear and convincing evidence to find misconduct in violation of Rule 3.1.

7. (a) Count VIII charges that Respondent knowingly disobeyed a court obligation in violation of Rule 3.4(c) by failing to file the answering brief once he had agreed to do so.

. . . .

(d) Respondent has admitted the underlying facts and that those facts support the charge. The Board finds there was sufficiently clear and convincing evidence to find misconduct in violation of Rule 3.1.

8. (a) Count IX charges that Respondent engaged in a dishonest course of conduct toward his client in violation of Rule 8.4(c) as a result of the previously admitted specific violations, including his failure to inform his client that (i) the appeal bond had not been filed (Count IV); (ii) that the appeal had been dismissed (Count V); and (iii) that she had been ordered to pay the opposing counsel's fees (Count VI).

. . . .

(d) The specific failures of Respondent referenced in Count IX were (i) sufficiently numerous, (ii) over a prolonged period of time and most importantly (iii) done with essentially the same purpose of avoidance so as to constitute a 'pattern' of repeated offenses and, therefore, constitute a type of conduct even though each of the three complained of acts is the subject of a separate count of misconduct. This is so because the adverse effect to the client's rights was cumulative and also because it was part of a strategy, planned by Respondent." (Transcript and Brief citations omitted).

As to Carmine's representation of his client, Padavoni,
(Case No. 1010):

"Findings of Fact:

1. Some time in 1976, Mr. Padavoni retained Respondent to assert a claim against an insurance carrier which on or about May 1974 had unilaterally reduced the maximum term of payment of benefits under a contract from twenty-five (25) to five (5) years.

2. Mr. Padavoni had become totally and permanently disabled in April 1975.

3. During 1977, Respondent negotiated with the insurance company on behalf of Mr. Padavoni, which negotiations eventually lead to the insurance company offering a settlement of $5,000.00. This settlement proposal was rejected by Mr. Padavoni upon Respondent's advice.

4. The insurance company's 'final' payment was made some time in 1980, consistent with their contention that the monthly benefits would be paid for a maximum of five (5) years rather than the twenty-five (25) years, which contention was the subject of the negotiations.

5. Respondent repeatedly advised his client that settlement negotiations were on-going or that the negotiations had lapsed and, therefore, suit would be filed from the time he was initially retained until early 1980. These representations were admitted by Respondent to be false in that all settlement negotiations ceased some time in 1977 and that suit was, in fact, never filed.

6. Between January and May 1986, another Delaware attorney (Elliott Alazraki) wrote six (6) letters to Respondent requesting Respondent to contact him about Mr. Padavoni's case pursuant to Mr. Padavoni's authorization that Alazraki take charge of the case.

7. Respondent did not contact Alazraki until some time during the summer of 1986 and at that time assured Alazraki that Respondent would contact Mr. Padavoni and inform him of the status of the case; however, Respondent failed in fact to contact Mr. Padavoni.

8. Respondent failed to advise Alazraki that there had been no settlement negotiations for approximately nine (9) years and that suit had never been filed.

9. On November 11 and December 3, 1986, Alazraki again wrote to Respondent requesting that Respondent prepare and sign a stipulation for substitution of counsel but Alazraki received no response.

10. On January 8, 1987, a *subpoena duces tecum* was hand-delivered by the office of the Disciplinary Counsel to Respondent wherein he was directed to appear with Mr. Padavoni's file at the Office of Disciplinary Counsel on January 12, 1987. Respondent failed to appear at the appointed time.

11. Disciplinary Counsel later personally served Respondent again on January 28, 1987, with a second *subpoena duces tecum* to produce Mr. Padavoni's file in their office by February 2, 1987; however, Respondent again failed to respond to this subpoena.

12. On February 4, 1987, Disciplinary Counsel was forced to file a Petition in the Superior Court for an Order directing Respondent to comply with the second *subpoena duces tecum*, which Order was granted by the Superior Court on February 17, 1987.

13. On February 17, 1987, Respondent falsely represented to the Superior Court that the matter had been 'resolved' and that Alazraki 'didn't want to get involved in the case.'

14. On July 9, 1987, Respondent misled his client by stating 'I am endeavoring to get this matter scheduled for trial as soon as possible.' In fact no suit was pending and Mr. Padavoni was left with the misimpression that his claim had been filed and was proceeding to trial.

15. Mr. Padavoni further testified that on several other occasions Respondent stated that 'the courts were filled up and he would see when he could schedule it (the trial).' Mr. Padavoni also stated that he had made numerous calls to Respondent that were never returned[,] and that he personally was 'under the impression that it (the issue of the insurance contract) was in court all this time.'

Conclusions of Law:

This Panel finds that Respondent engaged in conduct which forms the basis of finding him in violation of the Disciplinary rules listed in Counts I, II, III, VIII, IX, X, XI, XII, . . . .

. . . .

2. (a) Count I charges that Respondent engaged in conduct that was, among other things, deceitful by his failure to be candid with his client about the status of his claim, in violation of Rule 8.4(c) and D.R. 1–102(A)(4) [of the Delaware Lawyer's Code of Professional Responsibility, hereinafter 'D.R.'].[2]

2. The Delaware Lawyer's Code of Professional    Responsibility was superseded by the Delaware

. . . .

(c) The misrepresentations about the backlog of the Court, attempting to get the matter scheduled for trial, *etc.*, obviously had the effect of misleading Mr. Padavoni as to the status of his case, conduct which was consistent with Doctor Lustig's opinion that this was a pattern by Respondent, the purpose of which was to deceive both himself and others, *i.e.*, Mr. Padavoni. Therefore, the Board finds sufficiently clear and convincing evidence that Respondent violated Count I.

3. Count II charges that Respondent engaged in conduct involving among other things deceit when he failed to be candid with Mr. Alazraki concerning the status of Mr. Padavoni's claim, in violation of Rule 8.4(c) and D.R. 1–102(A)(4). Respondent admits the underlying facts and that those facts support the charge of misconduct. The evidence produced at the hearing supports his admission and the Board finds that there was sufficiently clear and convincing evidence offered to prove this act of misconduct.

4. Count III charges that Respondent neglected his client's legal matter by failing to pursue settlement negotiations and in failing to file suit, both in violation of DR 6–101(A)(3). Respondent admits the underlying facts and that those facts support the charge of misconduct. The evidence produced at the hearing supports his admission and the Board finds that there was sufficiently clear and convincing evidence offered to prove this act of misconduct.

5. (a) Count ... VIII charge[s] [that] Respondent[:] ... failed to be candid with his client about the status of his client's claim; [failed to] be candid with Alazraki concerning the status of his client's claim; and grossly neglected his client's claim, and conduct which was prejudicial to the administration of justice (Count VIII). . . .

. . . .

(d) The Respondent has admitted that his conduct specifically was prejudicial to the administration of justice and the Board

agrees there was sufficient evidence to support Respondent's admission and, therefore, finds Count VIII to be proven.

6. Count IX charges Respondent with failure to protect his client's interest upon termination of the Respondent's representation by (i) failing to prepare a stipulation for substitution of counsel and (ii) failure to surrender his file to Alazraki in violation of Rule 1.16(d). Respondent has admitted the underlying facts and that those facts support the charge of misconduct. The Board finds there was sufficiently clear and convincing evidence that Respondent did fail to surrender his file to Alazraki on numerous occasions and that the failure to surrender the file in a timely fashion is a violation of Rule 1.16(d).

7. Counts X and XI charge Respondent with knowingly failing to respond to a lawful demand for information from Disciplinary Counsel by his failure to respond to the *subpoena duces tecum* on January 8, 1987, and January 28, 1987, in violation of Rule 8.1(b). Respondent has admitted the underlying facts and that these facts support the charges of misconduct. The Board finds there was sufficiently clear and convincing evidence to substantiate Respondent's admission as to Count X and Count XI.

8. Count XII charges that Respondent engaged in conduct involving among other things misrepresentation, when he misrepresented to the Superior Court that the matter had been resolved and that Alazraki did not wish to become involved, in violation of Rule 8.4(c). Respondent has admitted the underlying facts and that those facts support the charge. The Board finds there was sufficient evidence offered to support this admission of misconduct in violation of Rule 8.4(c)." (Transcript and Brief citations omitted).

As to Carmine's representation of his client, Anderson,

(Case No. 1011):

"Findings of Fact:

1. Ronald Anderson retained Respondent to represent him in connection with

Lawyer's Rules of Professional Conduct, effective October 1, 1985.

injuries received in an automobile accident on September 10, 1982, and Respondent did file a Complaint in the Superior Court on September 6, 1984. However, the Sheriff's Office was not able to effect service upon Defendant and the Summons was eventually returned *Non Est Inventus.*

2. Respondent never made further attempts to have the Summons and Complaint served, and in August 1985, his client died of an illness unrelated to the automobile accident.

3. On October 23, 1985, the Prothonotary's office issued a Notice to Respondent advising him that the suit he filed on behalf of his client would be dismissed for lack of prosecution.

4. In November 1985, Respondent's client's sister, Miss Jones, was appointed Administratrix of his Estate. By letter dated January 2, 1986, Respondent notified the Prothonotary's Office that Mr. Anderson had died and that he would 'be filing the necessary action to substitute the personal representative of Mr. Anderson's Estate.'

5. Under Superior Court Civil Rule 25, Respondent had a period of ninety (90) days from January 2, 1986, to file a motion for substitution of the personal representative, which motion was drafted by Respondent in February 1986, but never filed.

6. Respondent admitted that he told Miss Jones, the person selected to be the personal representative, that Respondent would continue to take care of the case and Respondent admits that another attorney (Theopalis Gregory) contacted Respondent to take over handling of the case, which Respondent states he agreed to so long as the appropriate release was signed by Miss Jones, but such a release was never presented to Respondent.

7. Miss Jones complained about Respondent's failure to return numerous telephone calls and that Respondent had stated that the case was going to arbitration before Judge Taylor. However, Respondent denied the statement about arbitration, instead saying he had advised Miss Jones of a contact from Judge Taylor's office, but

that this contact was pursuant to the rule to dismiss for lack of prosecution.

8. Miss Jones admitted that Respondent had advised her of the difficulties involved with this suit and that there might be no insurance coverage in this case.

Conclusions of Law:

The Board finds Respondent in violation of various disciplinary rules as alleged in Counts III and V,....

. . . .

3. Count III charges that Respondent failed to act with reasonable diligence by his failure to file the motion to substitute the Administratrix of Mr. Anderson's Estate in violation of Rule 1.3. The Respondent had admitted the underlying facts and that the facts support the charge. The Board finds there was sufficient evidence to support Respondent's admission of this act of misconduct.

. . . .

5. Count V charges Respondent with neglecting a legal matter entrusted to him by his failure diligently to attempt to effect service of process, in violation of D.R. 6–101(A)(3). The Respondent has admitted the underlying facts and that those facts support the charge alleged. The Board agrees that there is sufficient evidence to support this act of misconduct."

As to Carmine's representation of his client, Green,

(Case No. 1019):

"Findings of Fact:

1. Respondent was retained by Michael W. Green to represent his interests in defending a Child Support Petition in the Family Court. The Family Court, after a hearing before a judge on April 2, 1986, directed both counsel to file contemporaneous opening memoranda by May 1, 1986, as to certain issues, and any applications for attorneys' fees were to be filed by May 15, 1986. Neither counsel filed such memoranda on either May 1 or May 15, 1986, and on May 27, 1986, the Court issued a second Order stating that if memoranda were not filed by June 2, 1986, the Court would take appropriate action.

2. On June 2, 1986, Petitioner's counsel filed an Opening Memorandum and Application for Attorney's Fees, but no response to either was filed by Respondent.

3. On June 5, 1986, the Court allowed yet a second extension for each counsel to reply to the other's filings by June 23, 1986, but again Respondent failed to file any memorandum either in response to the issues raised or to the Application for Fees.

4. On July 1, 1986, the Court issued an Order as to Respondent's client's Review *De Novo* and on July 23, 1986, the Court issued an Order referenc[ing] the application for counsel fees.

5. Respondent did not send a copy of the Court's July 1 or July 23, 1986 Orders to his client, although Green admits that Respondent may have discussed the substance of the Court's July 1, 1986 Order with him by telephone.

6. The Court's July 23, 1986 Order among other things awarded a portion of the other side's counsel fees to be assessed against Mr. Green because it viewed Mr. Green's lack of cooperation more onerous than Mrs. Green's, although it noted earlier in the Order that both parties appeared to be indifferent and showing a lack of cooperation.

Conclusions of Law:

This Board finds that Respondent engaged in conduct which formed the basis of finding him in violation of disciplinary Rule 1.3 listed in Count III,....

. . . .

5. (a) Count III charges Respondent with failing to act with reasonable diligence by his failure to (i) file an opening memorandum; (ii) reply to Petitioner's Opening Memorandum; or (iii) reply to the Application for Fees, all in violation of Rule 1.3. The Board finds the evidence both clear and convincing that Respondent failed to file either an opening memorandum or a reply to Petitioner's Opening Memorandum or to respond to the Application for Fees." (Brief citations omitted).

**3.** Rule 8(c) of the Rules of the Board on Professional Responsibility directs the Board, in its Report to this Court, to set forth the mitigating

"Factors in Aggravation: [3]

(For Case Nos. 1008, 1010, 1011 and 1019)

1. Respondent was previously found to have violated DR 6–101(A)(3), being Case No. 976 decided on October 29, 1986. Additionally, the Censor Committee (predecessor to the Board on Professional Responsibility) found in Case No. 735 that Respondent failed to cooperate with the investigating member of the committee and by letter of November 13, 1980, issued a private admonition.

2. Respondent's actions reflected a pattern of misconduct.

3. Respondent's actions led to multiple offenses.

4. Respondent possessed substantial experience in the practice of law generally and in the specific field involved in two of these cases.

5. On March 3, 1986, this Respondent was warned by the Chairman of a different panel ... about the consequences of Respondent's failure to cooperate with Disciplinary Counsel and with the Board chairman in that other matter. That Chairman made a particular note that the Respondent failed to return telephone calls initiated by the Chairman and failed to respond to letters sent by Disciplinary Counsel.

Factors in Mitigation:

(For Case Nos. 1008, 1010, 1011 and 1019)

1. Respondent was suffering emotional problems during the period of time and apparently for some time prior to the time period involved in these cases.

2. Respondent has made restitution to Padavoni to rectify the financial damage of his misconduct in that case.

3. Respondent displayed a cooperative attitude towards the proceedings at least before the Board and was candid in admitting to most of the allegations of facts and admitting to the acts of misconduct which he felt were supported by those facts he admitted.

or aggravating circumstances which affect the nature or degree of discipline to be imposed.

4. Respondent has shown remorse for the damage caused by his actions and appears genuinely shamed by his conduct.

5. Respondent has sought to rehabilitate himself through extensive counselling with Doctor Lustig and putting in place a very elaborate monitoring system to try to insure the protection of the public during the pendency of these hearings.

6. The law firm in which Respondent is still a member has not only recognized the seriousness of Respondent's misconduct, but has through an elaborate and very time consuming system, resolved to work with Respondent rather than abandon him. Their confidence in his competence, but more importantly their commitment to the Respondent as a human being, is worthy of note and any sanction should encourage such actions by law firms in the future. Whether or not this has always been the resolve in the past is unknown, but this firm's loyalty should be seen as what Delaware lawyers are known for rather than the exception.

Sanctions Recommended:

(For Case Nos. 1008, 1010, 1011 and 1019)

1. The primary purpose of sanctions is to protect the public, and indeed the administration of justice as a system is an essential part of that protection mechanism. *In Re Kennedy*, Del. Supr., 472 A.2d 1317 (1984). The American Bar Association approved a guide for Standards For Imposing Lawyer's Sanctions in February 1986, which standards recognized several factors which the Board has accepted in making its recommendations to the Court in this case. Those factors are:

(a) Sanctions which appear to be either too lenient or too onerous may adversely impact not only upon other lawyers' future conduct, but may also affect the public's confidence in the profession itself. (ABA Standards at p. 1).

(b) Sanctions must distinguish degrees of harm by looking to whom an ethical duty was owed (client, public in general, legal system, or the profession), then to the individual respondent's mental state at the time of the act of misconduct (intent, knowingly, neglect), then to the extent of the injury and lastly to any factors in aggravation or mitigation (ABA Standards at p. 4).

2. Disbarment is the extreme discipline and is normally reserved for those cases where the Respondent has either (a) misappropriated clients' funds, *In re Sullivan*, Del.Supr., 530 A.2d 1115 (1987), or (b) when conduct has been so pervasive as to pose a continuing danger to the public. *In Re Kennedy*, [Del.Supr., 472 A.2d 1317, 1332–34 (1984)]. Neither appears to be true in this case. Respondent's failures did involve repeated neglect of his client's legal affairs and then a decision to ignore these failings rather than confront them, which avoidance compounded the damage to his client. The distinction between passive and active conduct may not always materially affect the damage to a client but such distinction may have a material effect on the Administration of Justice.

3. Disbarment has further been specifically rejected as a sanction in this case for the following reasons: (a) the evidence was not clear and convincing that Respondent's misconduct seriously injured the clients' ultimate legal rights, for example of custody (Case No. 1008), versus injury to one of the procedural steps in pursuing his clients' legal rights; (b) Respondent's pattern of not informing the client did delay detection of his misconduct and was, therefore, of some short-lived benefit to him, however, the evidence was not convincing that the conscious objective of Respondent's misconduct was to benefit himself even though the evidence was convincing that he was consciously aware of his misconduct; and (c) the financial damage of Respondent's misconduct appears to have been resolved (*i.e.*, Diggins and Green counsel fee awards [were] paid by Respondent[;] settlement [was] negotiated and paid in [the] Padavoni [case]).

4. Respondent's actions in these cases seemed to be more analogous to the circumstances of neglect such as is in the case of *[M]atter of Lewis*, Del.Supr., 528 A.2d 1192 (1987), wherein the sanction of suspension was imposed. Furthermore, the evidence does not suggest that Respon-

dent's failings are irreversible but to the contrary the self-imposed monitoring system seems to indicate an acknowledgment of the problem, a willingness to change his own patterns and, therefore, suspension is seen as the more appropriate remedy. However, the number of acts of misconduct and the serious nature of some of those acts does dictate a period of substantial suspension.

5. The Board recommends (a) that Respondent be suspended from the practice of law for a period of time of between two and two and one-half (2 to 2½) years, with some consideration given to the fact that he has voluntarily limited the scope and freedom of his practice, since at least June 1, 1987; (b) that as a condition of probation the Respondent continue counselling with Doctor Lustig at such intervals and for so long as Doctor Lustig recommends; and (c) that upon successful completion of the probation a monitoring system ... be considered as a limitation upon Respondent's practice to such a degree and for such duration as the Court deems appropriate after taking into consideration Respondent's rehabilitation.

6. The Board makes these recommendations in part because of the thoroughness of Respondent's self-imposed monitoring system and because the length of time from complaint to sanction has afforded both the Board and the Respondent the opportunity to test the commitment of the Respondent to rehabilitation." (Transcript and Brief citations omitted).

### This Court's Review

In this proceeding, no exceptions to the factual findings in the Report of the Board were filed by Carmine. Rules of the Board on Professional Responsibility Rule 9(e). With respect to the Board's conclusions of law, briefing and oral argument were waived by Carmine in this Court. Nevertheless, we have made a careful and independent review of both the factual findings and the conclusions of law that are set forth in the Board's Report.

Our scope of review with regard to the Board's factual findings is to determine whether the record contains substantial evidence to support those findings. *In re Lewis*, Del.Supr., 528 A.2d 1192, 1193 (1987); *In re Kennedy*, Del.Supr., 472 A.2d 1317, 1326 (1984); *In re Reed*, Del.Supr., 429 A.2d 987, 991 (1981). We review the Board's conclusions of law *de novo*. *In re Berl*, Del.Supr., 540 A.2d 410, 413 (1988). We are satisfied that the record before us clearly supports the findings of fact and the conclusions of law made by the Board in this case. *In re Lewis*, Del.Supr., 528 A.2d 1192 (1987); *In re Sanders*, Del.Supr., 498 A.2d 148 (1985); *In re Frabizzio*, Del. Supr., 498 A.2d 1076 (1985); *see also In re Ryan*, Del.Supr., 498 A.2d 515 (1985).

### Conclusion

We have considered the mitigating factors and the aggravating factors set forth in the Board's decision. We have also considered the recommendations of the Board. We have taken into particular consideration the fact that Carmine has voluntarily limited his practice of law since, at least, June 1, 1987. We conclude that the serious nature of the transgressions established in these proceedings requires, *inter alia*, that Carmine be suspended from the Bar of the State of Delaware for a period of two years.

Accordingly, IT IS ADJUDGED and ORDERED that Kenneth F. Carmine be disciplined as follows:

1. That Carmine be prohibited and suspended from engaging in the practice of law as a member of the Delaware Bar for a period of two years, commencing April 1, 1989, and ending on March 31, 1991.

2. That during such period, Carmine shall not (a) share in any legal fees arising from clients or cases referred by him, during the period of suspension, to any other attorney, or (b) share in any legal fees earned for services by others during such period of suspension; and

3. That Carmine shall arrange with another member of the Delaware Bar to protect the interests of any of his clients during the period of suspension, and shall submit to this Court on or before April 30, 1989, a certificate of compliance with this

paragraph, co-signed by the attorney who has undertaken the said assignment.

4. That during such period, Carmine shall continue counselling with Doctor Lustig, or another appropriate and qualified health care professional, for as long as such treatment is deemed warranted by the health care provider.

5. That during such period, Carmine shall make arrangements with Disciplinary Counsel for the Board on Professional Responsibility for the payment of the costs of these proceedings before the Board. In the event that said costs are not paid prior to March 31, 1991, the suspension shall remain in full force and effect until said costs are paid in full.

6. That this Opinion and Order be disseminated by Disciplinary Counsel in accordance with Rule 3 and Rule 14 of the Rules of the Board on Professional Responsibility.