**In the Matter of C. Waggaman BERL, Jr., Esquire, a Member of the Bar of the Supreme Court of the State of Delaware.**

Supreme Court of Delaware.

Submitted after Remand: Sept. 13, 1988.

Decided: May 11, 1989.

Sidney Balick (argued) of Sidney Balick & Associates, Wilmington, for C. Waggaman Berl, Jr.

L. Susan Faw (argued), Disciplinary Counsel, Bd. on Professional Responsibility, Wilmington.

Before HORSEY, MOORE and WALSH, JJ.

PER CURIAM:

This disciplinary matter, involving a member of the Bar of this Court, C. Waggaman Berl, Jr., is before the Court for a second time. In our first decision, we affirmed a finding of the Board on Professional Responsibility that Berl had violated Rule 1.5(e)(1) of the Delaware Lawyers' Rules of Professional Conduct by improperly sharing with Stephen A. Sheller, a Philadelphia attorney, in a fee division received from a medical malpractice recovery of Dennis Robinson in settlement of Delaware court litigation. *Matter of Berl*, Del.Supr., 540 A.2d 410 (1988). However, we found that we could not sustain the Board's further finding that Berl had also violated Rule 1.4(b) [1] in admittedly failing to advise

---

1. Rule 1.4(b) provides:

A lawyer shall explain a matter to the extent

Robinson of the fee limitations of the Delaware medical malpractice statute, 18 *Del.C.* § 6865. We found the Board's report lacking in explicit, and supportive, findings establishing the time when a lawyer-client relationship was found to have arisen between Berl and Robinson from which a Rule 1.4(b) duty evolved. In our view, the timing of an attorney-client relationship arising between Berl and Robinson was significant to our review of the Board's finding of Berl's violation of a Rule 1.4(b) duty to disclose section 6865 to Robinson.

On motion for rehearing, Disciplinary Counsel contended that the Board had implicitly found a lawyer-client relationship to have arisen between Berl and Robinson either from their pre-referral contacts or from Berl's fee sharing violation of Rule 1.5(e). However, Berl argued that the hearing record concerning his pre-referral contacts with Robinson permitted but one conclusion: that no lawyer-client relationship had arisen between them either expressly or by inference from their conduct. *Matter of Berl,* 540 A.2d at 414. We understood Berl's position to be, and the record to confirm, that Berl had *refused* to represent Robinson and had referred Robinson's case to Sheller as soon as Berl discovered that Robinson's claim lay against a Delaware physician with whom Berl had a close relationship.

We also understood that after Berl's referral of Robinson's case to Sheller, Berl had no further contacts with Robinson and no duty to explain Delaware fee limitations on a malpractice recovery. Berl also took the position that the sums he received from Sheller were for services Berl purportedly rendered as a consultant to Sheller and as an expert on Delaware malpractice law. However, Berl's characterization of his post-referral role did not square with the Board's findings from Berl's post-referral activities in the case that Berl remained interested in the case and that Berl rendered ongoing services in the case until it was settled. 540 A.2d at 414 and n. 6.

We concluded that it was important that this apparent conflict in the record be resolved and that our review function precluded us from assuming the role of fact finder. In our view, for a Rule 1.4(b) duty to advise Robinson to attach and, in turn, require Berl to inform Robinson of section 6865, the Board should make more explicit findings as to when in Berl's dealings with Robinson the Board found a lawyer-client relationship to arise. For that reason we remanded the matter to the Board for "more specific findings of fact regarding the existence of an attorney-client relationship if a Rule 1.4(b) violation is to be sustained." 540 A.2d at 415.

Following remand, Disciplinary Counsel enlarged the record, without objection, to include several additional letters from Robinson to Berl written between November 29, 1983 and December 19, 1983. The record was also enlarged to include two blank forms of authorization for release of medical information customarily used by Berl. Also added to the record was a copy of a letter dated December 7, 1983 from Berl to Robinson's attorney in South Carolina who had handled Robinson's related workmen's compensation disability claim. Following reargument by the parties on the remanded issue of the Rule 1.4(b) violation, the Board filed with this Court in September its second and final report.

The report recounts that in argument upon remand Berl reiterated his position that the facts of record were insufficient "to show that he ever agreed to represent Robinson; that he simply referred Robinson to Pennsylvania counsel, Sheller; that what Berl did thereafter was as a consultant to Sheller; and that he had no attorney-client relationship to Robinson and owed him no duties except [confidentiality]." Therefore, Berl argued, he could not be found to have violated Rule 1.4(b).

The Board has decisively rejected Berl's position and found in his pre-referral and post-referral activities, with supportive findings of fact, that Berl entered into an

reasonably necessary to permit the client to make informed decisions regarding the repre-

sentation.

ongoing attorney-client relationship with Robinson. Quoting for the first time Berl's testimony · before the Board, the Board finds that Berl himself characterized his role on Robinson's behalf *before* referring Robinson's case to Sheller as "attorney in charge." Using Berl's own testimony, the Board finds "not that Robinson was not a client but rather that Berl was doing work for Robinson throughout the matter in the expectation of a contingent fee." As for the significance of Berl's "referral" of Robinson to Sheller, Berl describes his post-referral role as follows:

> ... it is my invariable practice to say to a client, "Look, this is what I am going to do, and you don't have to be concerned about it because I am still going to be working on your case. I will be in the background, but I just do not want my name on the official papers." And in substance I probably said something to him like "It is not going to change the fee arrangement. As it turns out to be, in substance what you get is two for the price of one." I find myself using that expression quite often.

In defending the amount of the fee he received from the case as not unreasonable, Berl admits his performance of valuable services for Robinson:

> "Well, I don't think it is unreasonable at all, because you have to look at it in terms of the service you render to somebody. What I was called upon to do was to take a case, analyze the case based upon 15 or 20 years experience, do what I had to do to do my thing, get it started, and as it turned out in this case, get it into capable hands to pursue and get a good result. So I did what I was called upon to do. In fact, I think I did somewhat more than I was called upon to do, really, in terms of my active involvement in the case.
>
> This is not a situation where a lawyer just simply makes a referral without doing any work. This is a case that I retained an active interest in right along and spent a considerable amount of time on. So I don't regard it as being unreasonable at all."

Berl also testified that Robinson knew or should have known that Berl was "going to be continuing in the case" after he referred the case to Sheller. Berl testified:

> ... I am confident that I told him that while the case was going up to Mr. Sheller, I would be continuing to be involved in the case, although not in an official way. And I am sure he knew that and I am sure he acquiesced in that and I am sure he realized that there would be a fee paid to me. Because anybody in his right mind knows that lawyers don't work for nothing.

On the issue of whether Berl, while performing his prereferral activities, breached a Rule 1.4(b) duty owed Robinson, Berl conceded his representation of Robinson:

> Q. ... Do you know of any matter involving this litigation, this case, insofar as you were involved, that you did not explain to Mr. Robinson?
>
> A. No. *While I was attorney in charge,* so to speak, I think I made all explanations of what I was doing, exactly what I intended to do and exactly what I did do. [Emphasis added.]

On essentially this evidence, the Board has specifically and expressly found:

> (1) "that a lawyer-client relationship existed between Robinson and Berl ... at the time Berl recommended to Robinson that Sheller be employed as lead record counsel for Robinson"; and
>
> (2) that such a lawyer-client relationship "continued until the conclusion of the case."

From these findings, the Board has concluded that Berl, in representing Robinson, was "obligated to comply with" Rule 1.4(b) of the Rules of Professional Conduct. The Board has further concluded "by clear and convincing evidence" that Berl has failed to comply with Rule 1.4(b) by failing to "advise Robinson of the terms of 18 *Del.C.* § 6865 concerning the limitation on attorney's fees in medical malpractice cases." The Board has further explicitly found that Berl's duty to so inform Robinson attached in his pre-referral representation of Robinson. The Board reasons that "[s]uch advice was directly relevant to Robinson's

consideration of and decision on Berl's advice while he was 'attorney in charge,' that Robinson employ Sheller, a Pennsylvania lawyer, as lead counsel of record." The Board also finds that when Berl was "counsel[ing] Robinson to bring in Sheller as lead counsel, Berl suggested to Robinson that Robinson's fee would not change"; and that Berl "had no basis for knowing or believing" that Sheller would either advise Robinson of the terms of the Delaware medical malpractice fee limitations statute or that Sheller would abide by such limitations. Finally, the Board finds that since "Berl expected to share in any fee which resulted in the matter ... Berl should have advised Robinson of the specifics of 18 *Del.C.* § 6865 so that Robinson could make an informed judgment with respect to whatever fee arrangement was sought by Sheller for the benefit of Sheller and Berl." The Board thereby clearly finds Berl to have breached his Rule 1.4(b) duty.

Berl has filed no exceptions to the Board's report nor to any of its findings and conclusions; nor has Berl requested to be heard on the matter of the appropriate sanctions to be imposed for his previously found violation of Rule 1.5(e)(1), as to which we deferred our ruling, and the remaining Rule 1.4(b) charge.

\* \* \*

The Board's final report dispels all uncertainty and doubt with respect to whether Berl violated Rule 1.4(b) of the Rules of Professional Conduct by failing to advise Robinson of the fee limitations specified in 18 *Del.C.* § 6865. As noted above, this original finding of the Board is now not only fully detailed and explained by the Board but clearly documented by the record evidence contained in the report, only a part of which we have quoted. Clearly, the record, as reflected in the Board's final report, contains substantial, indeed overwhelming, evidence to support those findings. *In re Lewis*, Del.Supr., 528 A.2d 1192, 1193 (1987); *In re Kennedy*, Del.Supr., 472 A.2d 1317, 1326 (1984); *In re Reed*, Del.Supr., 429 A.2d 987, 991 (1981).

Thus, we are satisfied that the record of the evidentiary hearing clearly supports the detailed findings of fact made by the Board. Hence, it is clear beyond peradventure that Berl came under an attorney-client relationship with Robinson in his pre-referral communications and activities on Robinson's behalf and that such attorney-client relationship continued until the conclusion of the case. Therefore, we affirm the Board's ultimate conclusion of law that Berl violated Rule 1.4(b) by breaching his duty to his client Robinson to advise him of the attorney's fee limitations applicable to medical malpractice cases as set forth in 18 *Del.C.* § 6865.

Having found Berl to have violated both Rule 1.4(b) and Rule 1.5(e)(1) in the course of his representation of Robinson, we reject Berl's request for a private admonition and we conclude that the appropriate sanction to be imposed is a public reprimand.