**In the Matter of a MEMBER OF the BAR.**

Supreme Court of Delaware.

Feb. 15, 1967.

Edmund N. Carpenter, II, Wilmington, for the Censor Committee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice.

We are in receipt of a Final Report from the Censor Committee together with exceptions filed by the Respondent to the Draft Report of the Censor Committee, all pursuant to Rule 32(2) (a) of the Rules of this Court, Del.C.Ann. The Final Report of the Censor Committee under Rule 32(3), prepared after a hearing at which the Respondent was present, has the force and effect of a Master's Report in Chancery, to which the Respondent under the rule may file exceptions to all or part of the report. No exceptions to the Final Report were filed by the Respondent, but he was permitted to appear before us with a representative of the Censor Committee and state additional facts which had developed subsequent to the preparation of the Committee's Final Report.

The Censor Committee recommends to us that we take appropriate disciplinary action against the Respondent. Three separate matters are involved.

The first, Censor Committee Case No. 134, involves the referral to the Respondent by a New Jersey lawyer of a personal injury claim arising out of an automobile accident in which the New Jersey claimant was injured, and in which a Delaware resident, the driver of the other car, was killed. It was pointed out to the Respondent that suit was to be brought against the estate of the Delaware decedent. The Respondent accepted the representation on a

contingent basis, and the New Jersey lawyer asked that suit be started without delay because the Statute of Limitations would shortly bar the action.

Despite repeated requests from his New Jersey associate, the Respondent not only failed to institute suit, but also wholly failed to answer his correspondent's letters making inquiry as to the status of the case. The New Jersey lawyer finally learned, after the passage of the period of limitation, that suit had not been filed, and that his client's cause of action was thereby barred. Ultimately, suit was instituted against the Respondent for negligence in his handling of the matter, in which suit a judgment by default was obtained.

When this case was referred to the Censor Committee, a member of the Committee was assigned under the rule to make a preliminary investigation and report back to the Committee. On at least three occasions this Committee member wrote the Respondent, asking him to state his position. The Respondent never replied to these inquiries.

The conclusion of the Committee upon this case was that, while the conduct of the Respondent approached willfulness, there was no express misrepresentation or deceit on his part.

Since the filing of the Censor Committee's report, the following circumstance has taken place. The Respondent has settled in full the action for negligence brought against him by the New Jersey claimant, and has obtained a satisfaction of the default judgment entered against him.

The second complaint against the Respondent, Censor Committee Case No. 141, concerns a claim referred to him from Maryland for collection. Upon receipt of the data concerning the claim, the Respondent advised his correspondent that the debtor was willing to sign a judgment note. This was acceptable to the creditor. The Respondent, however, did not follow through by obtaining an executed judgment note. Thereafter, for a period of over four years, the Respondent did nothing further toward the collection of this claim, and failed to answer numerous inquiries about it addressed to him by the forwarding lawyer.

During his appearance before us, the Respondent stated that suit upon this claim had not been barred by reason of the Statute of Limitations because the debtor had acknowledged the indebtedness, and that he was prepared to so testify if suit was brought. He also stated that in his opinion any judgment obtained against the debtor would be uncollectible. Whether or not Respondent's neglect in fact has caused, or will cause, a loss to the creditor cannot be presently determined.

Again, the Respondent failed to acknowledge or reply to letters addressed to him from the Censor Committee asking him to state his position with respect to this matter.

The Censor Committee found that the Respondent agreed to handle this collection claim, thereafter neglected the matter, and failed to keep forwarding counsel informed. The Committee, however, was of the opinion that the Respondent was not guilty of express misrepresentation or deceit.

The third complaint against the Respondent, Censor Committee Case No. 145, involves the settlement of an estate. The will was probated on February 23, 1960, and letters testamentary issued to the decedent's widow. The Respondent was retained as attorney for the estate.

Thereafter, no inventory in the estate was filed within three months as required by 12 Del.C. § 1905. No schedule of deductions for inheritance tax purposes was filed within thirteen months as required by 30 Del.C. § 1324. No accounting was filed within one year as required by 12 Del.C. § 2301.

In the course of settling the estate, a problem arose from the fact that a nephew

of the decedent had predeceased the decedent. This nephew had lived with the decedent and owned land on which the decedent had spent substantial sums. The Respondent was also attorney for the nephew's estate.

It was first thought that the decedent was the heir of the nephew, but it later developed that the nephew had half-brothers living in New York. The Respondent undertook to work out an arrangement with the half-brothers in order to adjust the claim of the decedent's estate upon the nephew's estate for the valuable improvements gratuitously made by the decedent upon the nephew's land.

A settlement of the matter was negotiated which culminated in agreement on January 21, 1965, thus clearing the way for final settlement of the decedent's estate. Despite this, and despite numerous attempts by the Executrix to get him to act, the Respondent, as of the date of the Censor Committee hearing, took no steps toward the final settlement of the decedent's estate.

When the Respondent appeared before us he stated that he had completed the steps necessary for the settlement of the estate, which was delayed at that point by reason of the necessity of obtaining clearance from the tax authorities.

Again, as in Cases No. 134 and 141, the Respondent failed to answer inquiries from the Censor Committee concerning the matter.

The Censor Committee found that there was a continuous delay by the Respondent in the performance of his responsibility to his client, and a continuous neglect to satisfactorily explain the delay to this client. The Committee found that there was no express misrepresentation or deceit by the Respondent.

The Censor Committee, based on the above facts, found that the Respondent's conduct was a violation of Canon 15 of the Canons of Professional Ethics, made obligatory upon members of the Bar of this Court by Rule 33(2), in that he failed to devote his utmost learning and ability in his representation of his client's interests.

In addition, the Committee was of the opinion that Canon 21, requiring "Punctuality and Expedition," and Canon 22, requiring "Candor and Fairness" from a lawyer, were violated by the Respondent's conduct.

The Committee further found that the Respondent's conduct was a violation of the oath he took upon admission to the Bar that he conduct himself in the office of an attorney "with all good fidelity, as well to the court as to the client."

Finally, the Committee found that the failure of the Respondent to respond to the investigatory letters from the members of the Committee assigned to that purpose should be taken into consideration in proceedings of this nature.

We have carefully considered the Final Report of the Censor Committee and the statements of the Respondent made during his appearance before us. We are of the opinion that the Censor Committee's conclusion that the Respondent has been guilty of unprofessional conduct is warranted by the facts. We accordingly affirm those findings and accept the Committee's recommendation that appropriate disciplinary action be taken against the Respondent. The correctness of this conclusion is demonstrated by a reading of the extensive Annotation on the general subject found in 96 A.L.R.2d 823.

The question then becomes, What shall be the nature of the discipline? Reference to the cited Annotation will easily demonstrate that we have wide latitude in determining the form of discipline. Under somewhat similar circumstances, other courts have ranged from private censure, through suspension, to the ultimate penalty of disbarment.

We note that in almost all cases resulting in suspension from practice for a period, or disbarment, the lawyer involved was guilty

of deceit or misrepresentation of fact to his client. Such is not the case at bar for the Respondent has been expressly exonerated by the Committee of those charges.

We note, also, that in the cases imposing such severe penalties the client actually suffered pecuniary loss as a result of the lawyer's deceit. Such is not the case at bar for no out-of-pocket loss has been suffered by any of these three clients, the Respondent having settled the negligence action brought against him by the client whose cause of action he permitted to become stale through inattention.

Nevertheless, the conduct of the Respondent in these three matters, and his failure to answer inquiries concerning them, are violations of the high standards required of him as a lawyer. He is guilty of negligence in his representation of three clients, and he deliberately failed to answer the investigating members of the Censor Committee when asked to do so. His explanation that he did not answer because he did not dispute the facts is no excuse for his refusal to cooperate with the Committee which is an arm of this Court.

 This Court, charged with the duty of upholding and enforcing the ethical standards of the profession, cannot and will not tolerate the negligent disregard of a client's interests by a member of this Bar. Too often it has come to our attention that a member of the Bar has delayed his client's business by reason of either laziness or a cavalier approach to the client's interests. Indeed, most complaints filed against lawyers before the Censor Committee are the result of either the dilatoriness of the lawyer, or his failure to keep his client informed of what he has done. We will not condone such irresponsible conduct on the part of a member of this Bar.

In the case of the Respondent, we have taken into consideration that he is at most chargeable with negligence and with a failure to keep his client advised of the status of his business. We have taken into further consideration the fact that, in the one case in which the client's cause of action was lost, he has made restitution. We have noted, also, that in the hearing before the Censor Committee the Respondent appeared and freely admitted his negligence and tried to conceal nothing.

Under the circumstances, we think the Respondent will be sufficiently disciplined by a public reprimand and censure for his negligent and dilatory handling of his clients' affairs.