In the Matter of a member of the Bar of the Supreme Court of Delaware, John H. BENGE, Jr.

No. 529, 1999.

Supreme Court of Delaware.

Submitted: May 23, 2000.
Decided: June 13, 2000.

John H. Benge, Jr., pro se.

Andrea L. Rocanelli (argued), Mary Johnston, Office of Disciplinary Counsel, Wilmington, Delaware.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, JJ., constituting the Court en Banc.

PER CURIAM:

This matter is before the Court for final disciplinary action upon review of a Final Report and Recommendations of the Board on Professional Responsibility ("Board"). The Final Report was issued following a two-day hearing and the post-hearing filings of the parties. At issue before the Board was a Petition to Discipline the Respondent, John H. Benge, Jr.

### PETITION FOR DISCIPLINE

The Petition for Discipline filed by the Office of Disciplinary Counsel ("ODC") set forth ten counts alleging violations of the Delaware Lawyers' Rules of Professional

Conduct. Prior to the Board's hearing, the ODC abandoned Counts Six, Seven, and Eight. Consequently, the Board hearing involved Benge's alleged violations of the seven remaining charges: Counts One through Five, Nine and Ten.

Count One of the Petition for Discipline contends that Benge violated Rule 1.1. This rule provides that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

Count Two of the Petition for Discipline contends that Benge violated Rule 1.2(a). In pertinent part this rule provides that "[a] lawyer shall abide by a client's decisions concerning the objectives of representation ... and shall consult with the client as to the means by which they are to be pursued."

Count Three of the Petition for Discipline contends that Benge violated Rule 1.3. This rule provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

Count Four of the Petition for Discipline contends that Benge violated Rule 1.4(a). This rule provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information."

Count Five of the Petition for Discipline contends that Benge violated Rule 1.4(b). This rule provides that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

Count Nine of the Petition for Discipline contends that Benge violated Rule 7(4) of the Rules of the Board on Professional Responsibility of the Supreme Court of Delaware. The ODC contended that Benge violated the terms of the two year probation entered as an order by the Supreme Court of Delaware: *In the Matter of Benge*, Del.Supr., No. 362, 1996, 687 A.2d 194 (Sept. 18, 1996). It contended that Benge violated that portion of the probation which required that, "the Benge shall communicate with each client in writing regarding their pending matters not less frequently than once every three months, and shall respond promptly to reasonable requests for information."

Count Ten of the Petition for Discipline alleged that Benge violated rule 3.3(a)(1). This rule provides that a lawyer shall not knowingly "make a false statement of material fact or law to a tribunal."

## BOARD'S DECISION

It was the unanimous decision of the Board that the ODC established by clear and convincing evidence that Benge violated Count Three, Rule 1.3; Count Four, Rule 1.4(a); and Count Nine, Board Rule 7(4). By a two-to-one decision, the Board also concluded that the ODC established Benge's violation of Count One, Rule 1.1. The Board was not persuaded that the ODC established by clear and convincing evidence Benge's violation of Count Two, Rule 1.2(a); Count Five, Rule 1.4(b); or Count Ten, Rule 3.3(a)(1).

The majority of the Board recommended that Benge be publicly reprimanded, that his period of public probation be extended, that Benge pay the cost of the disciplinary proceedings, and that Benge reimburse his client, ACC, the sum of $3,315.44 plus interest. One member of the Board agreed with the latter two recommendations but concluded that Benge should be suspended from the practice of law for a period of one year.

## BENGE DEMURS–ODC'S OBJECTIONS

Benge did not file any objections to the Board's majority decision. The ODC objects to the Final Report on two grounds. First, ODC objects to the recommended sanction of a public reprimand and extended probation, instead of a period of suspen-

sion. Second, the ODC submits that the record evidence established by clear and convincing evidence Benge's violation of all seven remaining counts in the Petition to Discipline, although the Board determined that only three counts were established by clear and convincing evidence.

## BOARD'S DETERMINATIONS

The following recitation sets forth the findings of fact that the Board made in support of its conclusions of law.

The Petition for Discipline arises from Benge's representation of ACC in a Chapter 13 bankruptcy filing in the United States Bankruptcy Court for the District of Delaware. The Debtors, Vicki and Gary Solario, (the Debtors) filed for bankruptcy in August 23, 1996. The Debtors were represented by Joseph B. Green, Esquire. One of the Debtors' creditors was ACC. At the time of the bankruptcy filling, the Debtors owed ACC the sum of $9,732.09 pursuant to an installment sales agreement for the purchase of a motor vehicle.

ACC filed a proof of claim on September 26, 1996. On October 10, 1996, Benge was retained by ACC. For the period of time from October 16, 1996, when Benge filed an objection to the confirmation of the plan and a memorandum of law, until January 27, 1997, the bankruptcy court entered an order finding that the Debtors had failed to make timely pre-confirmation payments as required by the bankruptcy code. The court ordered the Debtors to cure all pre-confirmation arrears on or before February 17, 1997. The order stated that if the Debtors failed to comply the bankruptcy would be dismissed on February 24, 1997.

On January 28, 1997, Benge advised David Dinsmoor of ACC by telephone that the bankruptcy judge had signed an order providing for the dismissal of the petition with prejudice but that the order would not go into effect until February 24, 1997. ACC entered a summary of the conversation in an activity log on that date. A copy of the activity log was entered into evidence as Exhibit 1.

The bankruptcy court held a status hearing on February 24, 1997. At that time, the bankruptcy Judge signed an order extending the Debtors' time to comply with the January 27, 1997 order to March 17, 1997. Benge did not attend the February 24, 1997 hearing.

The ACC activity log contains an entry of February 25, 1997. The entry states "TT Atty Benge, verified case dismissed with prejudice, okay to assign for repo." Benge testified that while at the bankruptcy court on February 24 or 25 for another matter, he attempted to check the Solario file. He testified that the file was out but he confirmed with the court clerk, Kathleen Fitzpatrick, that the Debtors' petition for bankruptcy had been dismissed for the failure to comply with the order requiring the Debtors to make the pre-confirmation payments. This information was passed on to ACC on February 25, 1997.

It appears instead that the Debtors' petition was not dismissed by the bankruptcy court on February 24, 1997. On the bottom of the January 27, 1997 order, there is a handwritten notation which says "extended to 3/17/97" and below that a signature line wherein the word "judge" is written in and to the left of that line is the date of "2/24/97." Kathleen Fitzpatrick testified that she filled in the handwritten notation and that Judge Peter J. Walsh of the bankruptcy court signed it. Although there was a discussion in court on February 24, 1997 about dismissing the petition for the failure of the Debtors to comply with the pre-confirmation order, Attorney Green prevailed upon Judge Walsh not to dismiss the petition and to extend the time by which the Debtors could comply. Ms. Fitzpatrick testified that when the form was returned to the file it was returned as the same docket number because it was simply an extension of the January 27, 1997 order.

The activity log contains an entry of February 26, 1997 wherein Benge called

David Dinsmoor of ACC stating that he, Benge, had received a call from the Debtors' counsel stating that the Debtors had complied with the pre-confirmation order and that the dismissal has been vacated. The note then states that "he will check out with judge and call back tomorrow." There is then an entry of February 28, 1997 stating that David Dinsmoor spoke to Benge, that Benge had reviewed the file, and there is nothing indicating that the order was not in effect. The order referenced in the February 28, 1997 activity log note is the order dismissing the petition of the Debtors.

A letter from Joseph B. Green to Benge dated March 3, 1997 states, inter alia, "[a]s you are aware from speaking with my legal assistant last week, your client, in violation of the automatic stay imposed by the Bankruptcy Court, wrongfully repossessed the Debtors' motor vehicle. My understanding was that you and/or your client mistakenly believed the Debtors' case was dismissed, and you were going to advise your client to immediately return Debtors' vehicle." The letter further advises that the Debtors' vehicle had not yet been returned and if it was not returned by the end of business on March 3, 1997, Attorney Green would file an application on March 4, 1997, for an order to compel the return of the vehicle, for damages and for penalties, and a request for appropriate sanctions, costs and fees.

Green testified that there was no response by Benge to the March 3, 1997 letter. The vehicle had been repossessed on February 26, 1997. However, the vehicle was not transported elsewhere because Mr. Solario called and informed someone at ACC on February 28, 1997 that the vehicle should not have been repossessed.

There is no indication that Benge provided ACC a copy of the March 3, 1997 letter. On March 5, 1997, attorney Green filed a complaint with the bankruptcy court seeking to compel ACC to return the Solario vehicle because the repossession was in violation of the automatic stay pro-

visions of 11 U.S.C. § 362. The complaint also sought sanctions against ACC. Attorney Green provided a copy of the complaint to Benge.

ACC received a copy of the complaint on March 6, 1997. The ACC activity log contains an entry of March 11, 1997. At that point, David Dinsmoor spoke to Benge and Benge confirmed to ACC that the order dismissing the bankruptcy petition had been signed by the court and that the order dismissing the petition was self-executing. The log entry states that Benge was working to get papers so that he could provide them to ACC. (Exhibit "18"). There is then a fax from David Dinsmoor to Benge on March 13, 1997. The March 13, 1997 note states as follows:

Please be advised, we received the attached complaint this day. Our actions were based on your telephonic representation which have not been formally contradicted other then (sic) this complaint. Obviously, we are confused given the differences stated. If the case was dismissed with prejudice, you are authorized to respond assertively that the above is a frivolous action and hold Debtors' Counsel liable for our attorney fees and other provable costs. If such is not the case, please advise immediately. Kindly contact me immediately to confirm receipt of this communication and your thoughts on this matter.

The bankruptcy court held a status conference on March 17, 1997. At that time, the Debtors' time to comply with the court's earlier order was extended to March 24, 1997. David Dinsmoor was advised by Benge that the Debtors were still in arrears of the pre-confirmation payments, that the dismissal order was self-executing, and that Green was going to withdraw the March 5 complaint and convert the Chapter 13 petition to a Chapter 7 petition. Dinsmoor was also told that the Debtors would stipulate to the surrender of the repossessed motor vehicle. The March 17, 1997, ACC activity log entry states that the Debtors' vehicle would con-

tinue to be held until ACC received proper documentation.

On March 24, 1997, Green wrote to the bankruptcy trustee Michael B. Joseph, Esquire and forwarded a money order in the amount of $768.00 representing the balance of the pre-confirmation payments. In pertinent part, the forwarding letter states that "... John Benge's client, ACC consumer Finance Corp., in violation of the automatic stay, wrongfully repossessed said vehicle. I have filed an adversarial complaint which is scheduled for trial on April 29, 1997...." This letter was copied to Benge. It appears that this letter was not forwarded to ACC nor did Benge make any independent efforts to confirm that the bankruptcy petition had been dismissed.

The answer to the March 5 complaint was due on April 11, 1997. No answer to the complaint was filed. Benge testified that he spoke to Jack Cohen, general counsel for ACC, and that Cohen advised him to take a position that he could not take. This testimony was not confirmed by letter, nor is there any entry in the ACC activity log referencing the alleged conversation.

On April 16, 1997, Attorney Green wrote to Judge Peter I. Walsh. The letter states:

Trial is scheduled for April 29, 1997 in the above-captioned case; Defendant did not file an Answer to the complaint and default judgment is in order.

I have prepared and enclosed an Order which I request your Honor sign; however, as you will see, the Order I prepared contains requests for actual damages incurred, punitive damages for willful violation of § 362 and attorney fees. Therefore, I request that matter remain on the calendar for April 29th for presentation of evidence/support for these matters.

The letter of April 16, 1997 is copied to Benge and to the Trustee, Michael B. Joseph, Esquire. Appended to the letter is an order providing that the Debtors' vehicle be returned to the Debtors and providing for costs and sanctions against ACC. There is no indication that this letter or the proposed order was provided to ACC by Benge. While ACC was in default as of the April 16, 1997 letter, no default had yet been entered by the court.

On April 24, 1997, David Dinsmoor of ACC Corporation faxed a memorandum to Benge. The memorandum states: "[W]e remain in possession of the subject vehicle and would like to sell same. Kindly advise us of the status of this matter and when we will receive something definitive from the court and/or opposing counsel." It appears that prior to the April 24, 1997 memorandum David Dinsmoor of ACC called Benge on April 17, 1997 and April 22, 1997, and he did not receive a response to either telephone call.

The bankruptcy court held a hearing on the Debtors' complaint on April 29, 1997. Benge was not present at the hearing, nor was ACC represented. The court entered an order on April 30, 1997, requiring the Debtors' vehicle to be returned to the Debtors within five business days from the mailing of the order. The order provided that it shall be mailed by Federal Express/next day delivery to Defendant with a copy hand-delivered to Benge. The order further provided that if the Debtors' vehicle was not delivered to Joseph B. Green, Esquire within the allotted time that ACC would be penalized in the amount of $100.00 per day for the benefit of the Debtors/plaintiffs. The order also provided that a future date would be scheduled and noticed for a hearing to consider the Debtors'/plaintiffs' claims for damages incurred as a result of Defendant's wrongful repossession, for attorney's fees and costs and for any additional penalties deemed appropriate by the Court.

It appears that a copy of the order was forwarded by Joseph B. Green to ACC on May 1, 1997 in compliance with the April 30, 1997 order issued by Judge Walsh. A

copy of counsel's letter of May 1 and the order were provided to Benge. There were then several letters between ACC and Joseph Green about the return of the Debtors' vehicle. The vehicle was returned on May 7, 1997.

The ACC activity log contains an entry of May 19, 1997 stating that ACC had received notice of the hearing and the Debtors' objection to the ACC claim due to the improper repossession. The log entry then states that all information had been sent to Benge to file a response and to appear and present a defense based upon the good faith belief of ACC that the bankruptcy petition had been dismissed with prejudice.

There were then a series of telephone calls and messages by ACC to Benge on May 19, May 20, May 21, May 22, and May 28 which were not returned. It appears from the May 29 log entry that David Dinsmoor spoke to someone at the Benge's office on that date and a message was passed back to ACC that Benge would be at the June 24 hearing.

The bankruptcy court held a hearing on June 24, 1997. Benge did appear representing the interests of ACC at the penalty hearing. As a consequence of the hearing, the court entered an order on June 25, 1997 assessing damages against ACC in the amount of $2,299.54, attorney's fees in the amount of $515.90, and a fine in the amount of $500.00. The total award against ACC was in the amount of $3,315.44. The order required the payments to be made to Attorney Green on or before July 7, 1997. David Dinsmoor sent a letter to Joseph B. Green on July 2, 1997 paying the amount ordered by the court.

### Count One

The Board concludes that Benge violated Rule 1.1 by failing to provide competent representation to ACC. It appears to the Board that Benge had the requisite legal knowledge and skills to properly represent ACC in the bankruptcy court. The Board finds, however, that Benge did not exercise the thoroughness and preparation reasonably necessary to properly represent ACC.

It appears from the testimony of Joseph B. Green and from the colloquy between Benge and Judge Walsh at the June 24, 1997 hearing that Benge was aware that the January 27, 1997 order was not self-executing. That is, there would have to be a further decision and order from the court dismissing the bankruptcy petition for failure to make the pre-confirmation payments.

It is not clear whether Benge made any attempts to confirm with the court on February 24 or 25 that the Debtors' petition had been dismissed. Benge's conversation with Wendy Davis during the last week of February of 1997, the Green letter to Benge of March 3, 1997 and the Green letter to Benge of March 5, 1997 with a courtesy copy of the complaint, however, should have put Benge on notice both that the bankruptcy petition had not been dismissed and that there should be some further attempt to check with the court to determine the status of the bankruptcy petition. Also, it appears from Attorney Green's testimony that Benge was present in bankruptcy court on March 17 when the order dismissing the Debtors' petition was extended to March 24, 1997.

There is no indication that the Green letters of March 3 or March 5 were forwarded to ACC. Further, it appears from the March 11, 1997 log note that Benge advised ACC that the court docket had been checked and that the last matter on the docket was dated February 22. The Board finds that an appropriate check with the court's file or docket would have confirmed that the court had entered an order on February 24 extending the Debtors' time to comply with its earlier order to March 17. There was then a further extension to March 24, 1997. Benge was copied with Green's letter to Michael B. Joseph as Trustee making the pre-confirmation payments.

It is clear that ACC was attempting to determine from Benge the status of the bankruptcy petition as evidenced by the telephone calls and the ACC fax of April 24, 1997. As of April 24, 1997, as ACC continued to attempt to determine the status of the petition so that it could sell the Debtors' vehicle, Benge was aware that a hearing on the March 5, 1997 complaint was scheduled for April 29, 1997. This date appears in both Green's letters to the Trustee of March 24, 1997 and to Judge Walsh on April 16, 1997. The Board does not accept Benge's testimony that he informed Jack Cohen, general counsel for Acc, of the April 29 hearing and that he advised Cohen that Benge could not assume the positions allegedly espoused by Cohen during that telephone conversation.

As a consequence of the failure of Benge to confirm that the Debtors' petition had not been dismissed, ACC retained possession of the Debtors' vehicle in violation of the automatic stay provisions of the bankruptcy code. This improper possession subjected ACC to the sanctions entered by the court on June 25, 1997. The Board finds that the failure to properly check the court's dockets and files to determine whether the petition had been dismissed and to properly advise ACC with regard to the repossessed vehicle violates Rule 1.1.

### Count Three

The Board also finds that Benge violated Rule 1.3. This rule provides that a lawyer shall act with reasonable diligence and promptness in representing the client. We find that the failure of Benge to respond promptly to the ACC requests for information and his further failure to promptly and properly determine the status of the Debtors' petition subjected ACC to sanctions. Benge did not send the March 3, 1997 and March 5, 1997 letters to ACC. Benge did not promptly advise ACC of the April 29 hearing, nor did he appear or do anything to represent ACC at that hearing. The consequences of the failure to properly advise ACC about the petition

and the existence of the April 29 hearing subjected ACC to sanctions. These sanctions may have been lessened or avoided had Benge advised ACC at any time before April 29, 1997 that the Debtors' vehicle should have been returned.

### Count Four

The Board finds that Benge violated Count Four (Rule 1.4(a)). The Board views Counts Three and Four as companion rules largely involving the same operative facts. Nevertheless, the Board views Count Three (Rule 1.3), as involving actions that Respondent should have taken based upon his knowledge as a attorney conversant with bankruptcy law and based upon the information available to him about the bankruptcy petition and the April 29 hearing. The Board concludes that there was a further failure in response to Rule 1.4(a) because it appears that ACC was in contact with Benge both by telephone and in writing attempting to determine the status of the bankruptcy petition and the court's order dismissing the petition if the Debtors had not complied with the order requiring pre-confirmation payments. Benge either provided no response to the requests or information which was inaccurate. The failure to respond to the requests for information resulted in the repossession of the Debtors' vehicle, the failure to timely return the Debtors' vehicle, the filing of the March 5, 1997 complaint and the April 29, 1997 hearing which resulted in an order requiring the Debtors' vehicle to be returned and establishing a further hearing for sanctions. The sanctions hearing was held on June 24 and resulted in the sanctions granted by the June 25 order. Had Benge responded to the numerous phone calls and several written requests for information of March 13, 1997 and April 24, 1997, the sanctions would either not have been granted or would have been less.

### Count Nine

The Board also finds that Benge violated Board Rule 7(4) by violating the order of

the Supreme Court of Delaware entered *In the Matter of Benge,* Del.Supr., No. 362, 1996, 687 A.2d 194 (Sept. 18, 1996). The order entered by the Court on September 18, 1996 required, *inter alia,* Benge to communicate with each client in writing regarding pending matters not less frequently than once every three months, and that he shall respond promptly to reasonable requests for information. As more fully stated herein, the Board concludes that Benge did not promptly respond to reasonable requests for information. Further, during the period from December 23, 1996 to and including the date of the hearing on June 24, 1997 for a period of over six months there is no indication that Benge provided any communication to ACC in writing. The failure to communicate with ACC in writing is a violation of the order entered by the Supreme Court of Delaware on September 18, 1996.

It appears from the presentation of ODC that the Board was not being asked to review the September 18, 1996 order and to make any determination about the cumulative affect of the matters leading to the September 18, 1996 order in conjunction with the matters leading to the current petition. The Board was asked only to conclude that Benge failed to comply with the terms and conditions of the prior order by failing to communicate with his client in writing at least once every three months and to respond promptly to reasonable requests for information. To the extent that ODC asked the Board to find a violation of this specific provision of the September 18, 1996 order, the Board made that finding.

### VIOLATIONS AFFIRMED

■ This Court has made a careful and independent review of both the factual findings and the conclusions of law that are set forth in the Board's Final Report. Our scope of review with regard to the Board's factual findings is to determine whether the record contains substantial evidence to support those findings.[1] We review the Board's conclusions of law *de novo.*[2]

We are satisfied that the record before us supports the findings of fact and the conclusions of law made by the Board in this case with regard to the ethical violations that it determined had been established by clear and convincing evidence.[3] We do not address ODC's arguments about the merits of the other violations alleged in the Petition to Discipline, because we have concluded that the ethical violations found by the Board, and to which Benge has filed no objection, warrant his suspension

### BENGE'S DISCIPLINARY RECORD

Benge's disciplinary history began with Board Case No. 11, 1994. That case concerned Benge's representation of an elderly client in a personal injury case. The client lost at the arbitration because Benge failed to put on a case. Benge then failed to file an appeal from the arbitrator's order. The opposing counsel filed a motion to dismiss. Benge failed to respond because he mistakenly believed a demand for trial de novo had been filed. The Superior Court dismissed the case. For over two years after the dismissal, Benge failed to initiate discovery or contact opposing counsel. Benge later discovered that the case had been dismissed and filed a motion to re-open it. By that time, seven and one-half year had passed since the accident and two and one-half years had passed since the dismissal. The Superior Court denied the motion to re-open.

In Board Case No. 11, 1994, Benge admitted to violations of Rules 1.1 (lack of competence), 1.3 (lack of diligence), 3.2 (failure to expedite litigation) and 8.1(b)

1. *In re Higgins,* Del.Supr., 582 A.2d 929, 932 (1990).

2. *Id.*

3. *Id.*

(failure to cooperate in connection with the disciplinary investigation). Those admitted violations resulted in the imposition of a private admonition with conditions, including a two-year period of probation. Benge entered into a conditional admission which was accepted by the Board and approved by this Court on June 29, 1995. The probationary period began on June 29, 1995 and ended on June 29, 1997.

During the pendency of that private probation in Board Case No. 11, 1994, Benge engaged in conduct which resulted in four new investigations by the ODC. In Board Case No. 15, 1995, Benge admitted to violating Rule 1.4(a) for his failure to respond to his client's repeated requests for information and documents. In Board Case No. 1, 1996, Benge was charged by the ODC for his failure to comply with the terms of his prior private probation in Board Case No. 11, 1994 and his failure to respond to ODC inquiries. Benge admitted to violations of Board Rule 7(4). In Board Case No. 35, 1996, Benge admitted two violations of Rule 8.1(b), insofar as he had failed to respond to ODC in connection with two separate complaints by clients. In Board Case No. 34, 1996, Benge failed to file a brief on behalf of a client in this Court. Despite one extension of time granted at his request, Benge failed to either file or request a second extension. In addition, Benge failed to respond to the delinquency notice, a notice to show cause, and several communications from the Court. The appeal was dismissed three months after the brief had been due. Prior to filing the appeal, Benge failed to provide information to his client and misinformed his client of the status of the case.

After dismissal of the appeal, Benge failed to inform his client that the appeal had been dismissed and that opposing counsel sought costs and fees. Benge admitted to three violations of Rule 1.4(a) (lack of communication with clients). He also admitted violating Rule 8.4(d) (prejudice to the administration of justice).

Benge's conditional admissions in all four cases were accepted by the Board. They were approved by this Court on September 18, 1996. Benge was publicly reprimanded and placed on public probation for two years from September 18, 1996 through September 18, 1998.

## SUSPENSION APPROPRIATE SANCTION

■■■ The inherent and exclusive authority for disciplining members of our Bar is vested in this Court.[4] The Court has wide latitude in determining the form of discipline to be imposed.[5] In imposing sanctions, the Court is guided by its prior precedents.[6] Those prior precedents reflect, *inter alia*, that this Court has cited, with approval, the *ABA Standards for Imposing Lawyer Sanctions*.[7]

■■■ When deciding upon the appropriate sanction, the Court must consider that "[t]he primary purpose of disciplinary proceedings is 'to protect the public; to foster public confidence in the Bar; to preserve the integrity of the profession; and to deter other lawyers from similar misconduct.'"[8] The lawyer discipline system was not designed to be either punitive or penal in nature.[9] The American Bar Association Standards for Imposing Lawyer

4. See *In re Green*, Del.Supr., 464 A.2d 881, 885 (1983).

5. See *Matter of a Member of the Bar*, Del. Supr., 226 A.2d 705, 707 (1967).

6. See *In re Christie*, Del.Supr., 574 A.2d 845, 853 (1990).

7. See, e.g., *In re Barrett*, Del.Supr., 630 A.2d 652 (1993); *In re Brewster*, Del.Supr., 587 A.2d 1067, 1069–71 (1991); *In re Higgins*, Del.Supr., 582 A.2d 929, 932 (1990); *In re Clyne*, Del.Supr., 581 A.2d 1118, 1125 (1990).

8. *In re Figliola*, Del.Supr., 652 A.2d 1071, 1076 (1995) (*citing In re Agostini*, Del.Supr., 632 A.2d 80, 81 (1993)).

9. See *In re Rich*, Del.Supr., 559 A.2d 1251 (1989).

Sanctions ("ABA Standards") that are most relevant in Benge's case provide:

9.22 Aggravating factors include:

(a) prior disciplinary offenses; ...

(c) a pattern of misconduct;

(d) multiple offenses; ...

(g) refusal to acknowledge wrongful nature of conduct; ...

(i) substantial experience in the practice of law;

(j) indifference to making restitution.

4.42 Suspension is generally appropriate when:

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b) a lawyer engages in a pattern of neglect and cause injury or potential injury to a client.

8.2 Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system or the profession.

■ The most recent ethical violations found by the Board, to which Benge has filed no objections, occurred at a time when Benge was already serving a period of public probation for prior violations of the Delaware Lawyer Code of Professional Responsibility. Benge's record reflects a persistent pattern of client neglect that has continued unabated despite the imposition of a private admonition with a private probation and the subsequent imposition of a public reprimand with a public probation.[10] Benge's disciplinary history demonstrates an inexcusable disregard for his responsibilities to his clients as an officer of this Court.[11] Accordingly, we have concluded that an appropriate sanction must include a period of suspension because Benge was already on probation for prior ethical violations when he engaged in further acts of professional misconduct.[12] This Court orders that:

(1) Benge shall be prohibited and suspended from engaging in the practice of law for a period of one year commencing July 1, 2000 and ending upon his reinstatement, for which application may be made after June 30, 2001.

(2) During the suspension, Benge shall conduct no act directly or indirectly constituting the practice of law (including the sharing or receipt of any legal fees).

(3) Benge shall comply with the provisions of Rule 23 of the rules of the Board on Professional Responsibility.

(4) Benge shall arrange with another member or members of the Delaware Bar to protect the interests of his clients during the period of suspension, and shall submit to this Court on or before September 1, 2000, a certificate of compliance with this paragraph, co-signed by the attorney or attorneys who have undertaken such assignment.

(5) Benge shall pay the costs of the proceedings before the Board.

(6) Benge shall reimburse his client, ACC, in the amount of $3,315.44, plus interest.

(7) This Opinion shall be disseminated by Disciplinary Counsel in accordance with Rule 3 and rule 14 of the rules of the Board on Professional Responsibility.

Justice HARTNETT, concurring.

10. *Accord In re Sullivan,* Del.Supr, 727 A.2d 832 (1999); *In re McCann,* Del.Supr., 669 A.2d 49 (1995); *In re Mekler,* Del.Supr., 669 A.2d 655 (1995); and *In re Carmine,* Del. Supr., 559 A.2d 248 (1989).

11. *See In re Kennedy,* Del.Supr., 503 A.2d 1198 (1985).

12. *Accord In re Sullivan,* Del.Supr., 727 A.2d 832 (1999); *In re McCann,* Del.Supr., 669 A.2d 49 (1995); *In re Mekler,* Del.Supr., 669 A.2d 655 (1995); and *In re Carmine,* Del. Supr., 559 A.2d 248 (1989).

I concur in the opinion in all respects except that I would impose a suspension of six months rather than one year.