In the Matter of a Member of the Bar of the Supreme Court of the State of Delaware: Samuel SPILLER, Respondent.

No. 390, 2001.

Supreme Court of Delaware.

Submitted: Nov. 20, 2001.
Decided: Dec. 26, 2001.

Samuel Spiller, Wilmington, Delaware, respondent pro se.

Michael S. McGinniss, Office of Disciplinary Counsel, Wilmington, Delaware.

BEFORE: VEASEY, Chief Justice, WALSH, and STEELE, Justices.

PER CURIAM.

The matter before the Court is a lawyer disciplinary proceeding. A panel of the Board on Professional Responsibility (Board) issued its Final Report recommending that the respondent, Samuel Spiller, be disbarred from the practice of law in Delaware due to numerous violations of the Delaware Lawyers' Rules of Professional Conduct (DLRPC). Spiller filed a letter objecting to the Board's recommended sanction on several grounds. The Office of Disciplinary Counsel (ODC) filed a response in opposition to Spiller's objections. After careful review, we affirm the Board's findings and adopt its recommendation that Spiller be disbarred.

### The Board's Final Report

ODC filed a petition with the Board to discipline Spiller on eight separate, consolidated matters. Spiller admitted all 55 violations alleged in the petition. All of the allegations of the petition related to failures with respect to residential real estate settlements. A panel of the Board

held a hearing on January 31, 2001. ODC presented the testimony of Robert Krapf, Esquire, the receiver of Spiller's law practice, and Martin Zukoff, CPA, an auditor for the Lawyers' Fund for Client Protection. Spiller appeared at the hearing without counsel. He presented no witnesses other than himself.

Having considered the transcript of the hearing and the record below, we find the Board's undisputed findings of fact to be supported by the record. We adopt the factual findings contained in the Board's Final Report, which is attached to this opinion, and we incorporate them by reference. The following is a summary of the Board's relevant findings of facts:

Spiller was admitted to the Delaware Bar in 1960. At all times relevant to ODC's petition, Spiller was a solo practitioner who limited his practice to real estate settlements. In 1997, this Court publicly reprimanded Spiller and placed him on a two-year period of disciplinary probation for failing to maintain his books and records properly.[1] Spiller was on probation at the time of the events alleged in the ODC's petition.

The allegations in ODC's petition arose from several different real estate transactions that Spiller had not properly completed. Most of the cases involved residential real estate settlements in which monies were distributed at the settlement hearing and checks were dishonored. An audit of Spiller's books and records revealed that the complaints against Spiller were caused by: (1) Spiller's failure to reconcile his bank accounts on a regular basis; (2) Spiller's deposit of funds in an inactive account, which caused settlement checks to bounce; and (3) Spiller's failure to determine whether monies had been wired into the proper account, or at all, before issuing checks dependent upon the wired monies. The receiver testified that Spiller's practice was "organizational chaos."

Although Spiller's bank later honored many of the bounced checks (after several attempts, in some cases), there were a number of checks that Spiller's bank never honored. In all, Ticor Title Insurance Company paid $337,049.56 for mortgage payoffs arising from settlements in which funds were never available from Spiller's account. In addition to Spiller's financial difficulties, the receiver discovered approximately 294 documents, including deeds, mortgages, and satisfaction pieces that Spiller had not recorded and many that Spiller had not notarized. Ticor also paid $59,456 for unpaid real estate document recording fees, taxes, and other transaction fees.

The total approximate shortfall in Spiller's real estate accounts was $603,263.[2] Furthermore, there were 267 real estate transactions for which Spiller was the Ticor agent but failed to deliver the premiums to Ticor. The approximate total of the unpaid premiums was $43,752. Therefore, the total approximate deficiency was $645,800. Of that amount, about $275,000 was money that Spiller had advanced for real estate transactions involving American Residential Mortgage Company and its affiliate, New America Financial, Inc.,[3] and which was never delivered by those companies. The Board found that, although there was a $300,000 shortfall in Spiller's accounts that could not be recon-

---

1. *In re Spiller*, Del.Supr., 696 A.2d 398, Hartnett, J. (1997) (ORDER).

2. The amount is approximate because Spiller's real estate settlement account could not

be reconciled due to 20 missing settlement files.

3. New America Financial, Inc. subsequently filed for bankruptcy protection.

ciled due to 20 missing settlement files, there was no evidence that Spiller had stolen money or defrauded anyone. Nor was there any suggestion that Spiller had hidden or discarded the files for an improper purpose.

After considering all of the evidence, the Board found that Spiller had violated numerous professional duties, including: (i) failing to maintain his accounts in a competent manner;[4] (ii) failing to act with diligence and promptness in reconciling his accounts;[5] (iii) failing to properly identify and safeguard property belonging to a client or third party;[6] (iv) failing to promptly deliver funds to a client or third party;[7] (v) failing to maintain proper books and records;[8] and (vi) disbursing funds that were not good funds.[9]

The Board found that Spiller knew or should have known that his conduct was improper and that Spiller's misconduct had caused significant harm to his clients and the public. The Board concluded that more serious harm was averted only through the "extraordinary efforts" of the receiver.

The Board considered all of the aggravating circumstances, including Spiller's substantial experience as a lawyer, his prior disciplinary record, and his pattern of misconduct. The Board also considered all of the mitigating circumstances, including Spiller's lack of selfish motive, his efforts to cure his practice difficulties, and the role played by American Residential Mortgage in contributing to Spiller's difficulties. After balancing all of the factors, the

Board concluded that disbarment was the only appropriate sanction.

### Spiller's Contentions

Spiller does not dispute any of the Board's factual findings. Spiller, however, does object to the Board's recommended sanction of disbarment on the following grounds: (1) the Board did not give sufficient weight to the absence of a disciplinary record during Spiller's many years of practice before his public reprimand and probation in 1997; (b) the Board did not give sufficient weight to the "severe mental stress" that he was experiencing during the relevant time period, which was caused by "inadequate staffing," and instead gave greater weight to the "mismanagement [itself] rather than the fact that stress *caused* the mismanagement;" (c) the Board did not give sufficient weight to Spiller's age, which he asserts was "a major factor in the mismanagement" of his practice; (4) Spiller's "inadequate staffing created chaotic conditions and time pressures which [he] was, eventually, unable to cope with;" and (5) there was no "hint of impropriety" on his part, although he was "guilty of gross negligence." For these reasons, Spiller requests to be placed on permanent inactive status with no chance of reinstatement.

### Standard and Scope of Review
### Appropriate Sanction

■ ■ Because the Board's factual findings are undisputed, our only task is to consider the appropriateness of the Board's recommended sanction.[10] While

---

4. DELAWARE LAWYERS' RULES OF PROFESSIONAL CONDUCT Rule 1.1.

5. *Id.* Rule 1.3.

6. *Id.* Rule 1.15(a).

7. *Id.* Rule 1.15(b).

8. *Id.* Rule 1.15(d).

9. *Id.* Rule 1.15(h).

10. *In re Dorsey,* Del.Supr., 683 A.2d 1046, 1048 (1996).

the Board's recommendation may be helpful, the Court is not bound by it and may impose any sanction it deems appropriate.[11] Although the Court has wide latitude in determining the form of discipline to be imposed, we are guided by our prior lawyer disciplinary decisions.[12] Our precedents reflect that, in determining an appropriate sanction for lawyer misconduct, the Court has cited favorably to the theoretical framework found in the ABA Standards for Imposing Lawyer Sanctions.[13] That framework sets forth four factors relevant to determining an appropriate disciplinary sanction: (a) the ethical duties violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) aggravating and mitigating circumstances.[14]

■ In this case, we find that ABA Standard 4.41(c) compels the conclusion that disbarment is the only appropriate sanction for Spiller. Standard 4.41(c) provides that disbarment is generally appropriate when a lawyer has engaged "in a pattern of neglect with respect to client matters and [has caused] serious or potentially serious injury to a client." [15] Spiller's pattern of neglect involved hundreds of matters in which he failed to prepare, record, and/or notarize documents on behalf on his clients and others. His chronic failure to properly maintain his accounts and safeguard property belonging to others resulted in damages in excess of $645,000. In one instance, a client had her property sold at a sheriff's sale because

Spiller had failed to record the deed properly. Moreover, numerous attorneys had to be engaged pro bono in order to straighten out the confusion caused by Spiller's failure to properly record deeds or pay taxes and transfer fees. The receiver went to extraordinary lengths, spending nearly 1500 hours of time and $25,000 in costs, in order to reorganize Spiller's practice and to minimize the damage caused by his misconduct.

Although Spiller may not have intentionally converted the property of others, the record is clear that Spiller knew he was failing to provide the most fundamental services to his real estate clients and that his failings would result in harm to his clients and/or to others. As the Board found, Spiller "chose to continue a practice when he knew that he had inadequate staffing, inadequate time of his own, and which he certainly must have known would have caused damage to the public if all of the monies were not properly disbursed and all the documents not properly recorded."

Furthermore, contrary to Spiller's contentions, we find that the Board considered all of the evidence presented in aggravation and mitigation and appropriately concluded that the mitigating factors did not warrant the imposition of a lesser sanction. In Spiller's case, the aggravating factors included Spiller's substantial experience in the practice of law,[16] Spiller's pattern of misconduct,[17] Spiller's commis-

---

11. *In re Mekler*, Del.Supr., 669 A.2d 655, 668 (1995).

12. *In re Maguire*, Del.Supr., 725 A.2d 417, 423 (1999).

13. *In re Benge*, Del.Supr., 754 A.2d 871, 879 (2000).

14. *In re Reardon*, Del.Supr., 759 A.2d 568, 575 (2000) (citing ABA STANDARDS FOR IMPOSING

LAWYER SANCTIONS, *Theoretical Framework* (1986 and as amended 1992)).

15. ABA STANDARDS FOR IMPOSING LAWYER SANCTIONS Standard 4.41(c) (1986).

16. *Id.* Standard 9.22(i).

17. *Id.* Standard 9.22(c).

sion of multiple offenses,[18] and Spiller's prior disciplinary record,[19] which included a public reprimand and two-year probation in 1997 for similar misconduct. It is significant and disturbing that Spiller's present acts of misconduct occurred while he was on probation.

In mitigation, the Board found that Spiller's misconduct was not the result of a dishonest or selfish motive.[20] To the extent Spiller contends that the Board failed to consider his age and his stress as factors in mitigation, we find no evidence in the record to support a conclusion that Spiller's age or stress amounted to a "disability or impairment,"[21] which appropriately could be considered in mitigation. Spiller presented no medical evidence that he was affected by any age-related or stress-related disorder or that his misconduct was caused by such a disorder. Moreover, the record supports the Board's finding that Spiller never sought any professional psychological or counseling help. We agree with the Board's assertion that "while it is likely that the practice failures caused mental stress it is less than clear that the mental stress caused the practice failures."

In sum, we agree with the Board's implicit conclusion that the mitigating circumstances did not outweigh the substantial aggravating circumstances in this case. Spiller was on probation imposed for similar disciplinary violations when he committed the numerous violations now at issue. Spiller failed to comply with the conditions of his probation and ignored his professional duties to his clients, which resulted in substantial harm to his clients and others. He has proven himself unable or unwilling to conform his conduct to the standards expected of a Delaware lawyer. This Court concludes that disbarment is the only appropriate remedy to protect the public and to preserve the integrity of the legal profession.

### Conclusion

The Board's recommended sanction is accepted. It is hereby ordered that Samuel Spiller be disbarred from membership in the Delaware Bar. His name shall be stricken immediately from the roll of attorneys entitled to practice before the courts of this State.